# Brink v. Kennedy.

April 22, 1941.

Ralph P. Rich, Jas. R. McGarry and Bert J. King for appellant.

R. Howard Smith for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

This is an appeal from a judgment of the Kenton circuit court entered on a verdict in the sum of $7,500 for damages resulting from personal injuries alleged to have been sustained by appellee as a result of an assault upon him by appellant and persons under his control, at his place of business known as the New Lookout House, near Covington, Kentucky.

Appellee had spent the early part of the night of December 18-19, 1937, in company of friends in Cincinnati, Ohio. At about 1 o'clock in the morning of December 19 he departed from his companions and joined another friend, Joe Derkin, at a hotel in downtown Cincinnati. In company with Derkin he visited the New Lookout House situated on the Dixie highway, a short distance south of Covington, arriving there about 3 o'clock in the morning.

The evidence is in sharp conflict as to what occurred from that time until appellee departed for Cincinnati. Appellee and Derkin testified that within 20 minutes after they arrived at the "Paddock Bar" (a part of the New Lookout House) they ordered a beer and were in the act of drinking same when a commotion occurred and they observed two strangers scuffling or fighting, one of whom was knocked or pushed in such manner as to be precipitated against appellee and to fall to the floor at appellee's feet. Appellee stooped over to render the victim aid, whereupon, without cause or provocation, appellant, who was not engaged in the other fight, attacked appellee, and struck him with a blackjack on the head

and other portions of the body, rendering him unconscious and inflicting severe and permanent injuries upon him. Thereupon he was forcibly ejected from the premises and to the highway. Shortly thereafter he regained consciousness and discovered that he had lost possession of his hat, gloves, and overcoat; in order to recover their possession he returned to the Paddock Bar and asked for the manager. Appellant was pointed out to him and appellee asked for his personal belongings and inquired why he had been so mistreated. Appellant then apologized to him, and invited him to go into the men's washroom for the purpose of cleaning up. Appellee testified that after he had entered the washroom he was attacked a second time, from behind, by three or four persons, some of whom he identified as waiters in the employ of appellant. He was brutally beaten, kicked, and maimed at the hands of these persons. Although appellant himself took no active part in the second assault, he stood by and refused to restrain the persons engaged therein. Appellee was again ejected from the barroom and his hat and coat were thrown after him. He thereupon walked down the Dixie highway toward Covington, where he was picked up by a passing motorist and escorted to the suspension bridge leading to Cincinnati over which he crossed. Arriving in Cincinnati he made his way to the office of the Blue & Gray Transportation Company, by whom he was employed. In a short time he proceeded to the home of his sister in Cincinnati, arriving there at approximately 6 A. M. After a brief rest he was treated by Dr. Samuel Bell and remained under his care and treatment for approximately 2 weeks, at the end of which time he resumed his employment. Several of appellee's fellow employees as well as his employer were at the place of business when he arrived that morning. They testified that he arrived between 4 and 4:30 A. M. All of these witnesses testified that appellee was covered with blood and his face was bruised and swollen beyond immediate recognition.

The testimony for appellant was to the effect that a short time after appellee arrived at the Paddock Bar he started an altercation with Ben Brink (appellant's father) and others, at which time, without provocation, he struck Ben Brink, wildly struck at others, and was removed by two persons. They testified that appellee did not receive any beating or injuries of any kind but

was merely restrained and ejected from the premises. A short time thereafter, according to witnesses for appellant, appellee returned to the Paddock Bar and asked to see Brink. Appellant at the time was coming down the steps from his office and, upon hearing his name called, approached appellee and extended his hand for the purpose of greeting him, whereupon appellee, without provocation, notice, or cause struck him and, throwing him to the floor, commenced beating him, and continued so to do until bystanders seized and pulled him off of Brink and quietly and, with no more force than was necessary to accomplish the purpose, ejected him from the premises.

Witnesses for appellant testified that as he was being conducted from the premises appellee jerked loose from those who had him in custody and struck at them and acted like a ''wild man'' rendering it necessary for one of them to strike him once in order to subdue him. They further testified that there were no marks, bruises or blood on appellee at the time he left the New Lookout House and that he was not seen by any of them during the remainder of the day. They variously fixed the time of the occurrence between 3:30 and 5:30 o'clock in the morning. The testimony is uncontradicted that appellee had had nothing to drink of an intoxicating nature until he ordered the beer at the Paddock Bar and that he was perfectly sober when the altercation commenced.

Appellant assigned nine grounds in support of his motion for a new trial but urges only four in his brief, therefore we will treat the other five grounds as abandoned.

The first ground relied upon for reversal is ''that the damages are excessive appearing to have been given under the influence of passion and prejudice.'' The second ground is that the court permitted the jury to award damages for permanent injuries and since the discussion of the one necessarily involves a discussion of the other we will treat them together. The instruction on damages permitted the jury to award both compensatory and punitive damages, but the jury was not instructed to return a separate verdict as to each. The form of this instruction was not objected to, consequently the right to separation of the damages in the verdict was waived by appellant and he does not complain in

that respect. Since the verdict of the jury did not separate the compensatory from the punitive damages, it is impossible for us to determine how much the jury allowed for each, or if any part of the damages allowed was by way of punishment. According to the testimony for appellee the assault occurred without provocation, was totally unwarranted and was in willful, wanton disregard of appellee's rights. Thus the jury was justified in awarding punitive damages, if it did so. Appellee himself testified that his nose was broken as a result of said injuries; that although two years had expired from the time of the injury to the date of the trial, he frequently saw wavey conditions in front of him while driving his truck on the highway; after reading a few seconds, letters would run together; he had great difficulty in breathing at night, occasioning loss of sleep; when he stooped over or rose he had dizzy spells; that objects appeared blurred at all times; that these symptoms had never occurred before the injuries complained of and had continuously been in existence since that time. Dr. A. F. Schultz testified that he saw appellee on December 27, 1937, which was eight days after the injuries were sustained, and at that time his examination disclosed a "hemorrhage of the white part of the eye, both eyes were swollen, there were bags and pouches underneath the eyes and the face was swollen about the entire region of the nose," that the swelling was so pronounced that no definite diagnosis could be made. In addition to the head injuries, he had bruises on his right knee and shin. Dr. Samuel Bell testified he saw the patient about noon December 19, 1937, which was the day he received the injuries; that both of his eyes were badly bruised and discolored and that the left eye was in very bad condition. He used an instrument to look into the inner part of the eye to see what damage had been done and discovered that the blood vessels of the inner eye were ruptured and a hemorrhage in the left eye was so severe that it was impossible to see into the eye at all. The nose was severely swollen and the septum in the nose was dislocated and pushed to the left. There were dark blood clots in the interior of the eye and the cheeks were bruised and swollen. He treated the patient on thirteen occasions from December 19, 1937, until January 16, 1938. He stated that the air passage in the nose would be blocked off and as a consequence thereof appellee would not be able to breathe

freely and there would be a tendency toward irritation and susceptibility to colds as a result of this condition. In response to a question as to the permanency of the trouble, he stated, "I think, as a matter of time, conditions certainly won't improve." Dr. Bell examined the eyes of appellee during the progress of the trial. He stated as a result of that examination that the blood vessels of the eyes were still dilated, a swollen condition remained in and about the nose, and the septum was still in its dislocated position.

Without doubt there was ample evidence to submit the question of the permanency of the injuries to the jury and if a reasonable award for punitive damages, added to a reasonable award for compensatory damages, does not exceed the sum of $7,500, the verdict of the jury must be upheld, irrespective of the actual amount of each fixed by the jury in its secret deliberation. Punitive damages must have some reasonable relation to the injuries and cause of it. Buford v. Hopewell, 140 Ky. 666, 131 S. W. 502, and if appellee's version is the true account of what occurred that requirement is met in full. Although some courts hold that the amount of punitive damages awarded must bear some reasonable proportion to the actual damages sustained, 15 Am. Jur. p. 738, such is not the rule in this state. Louisville & N. R. Co. v. Ritchel, 148 Ky. 701, 147 S. W. 411, 41 L. R. A., N. S., 958, Ann. Cas. 1913E, 517; Great Atlantic & Pacific Tea Co. v. Smith, 281 Ky. 583, 136 S. W. (2d) 759, 768. In the Ritchel case the plaintiff, a white girl twenty years of age, was accused by the conductor of the railroad company of being a colored woman and was compelled by him to ride in the colored coach. In ejecting her from the white coach he used force, although there was no physical injury resulting. The jury was authorized under the instruction to find either compensatory or punitive damages or both, and to state in their verdict the amount of each, if any. A verdict was returned for punitive damages alone in the sum of $3750. In upholding the verdict this court said [148 Ky. 701, 147 S. W. 414, 41 L. R. A., N. S., 958, Ann. Cas. 1913E, 517]:

"It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. Stacy v. [Portland] Pub. Co., 68 Me. [279] 287. In our opinion, however, this view is not cor-

rect, and does not agree with the great weight of authority. The correct rule, we think, is that if a right of action exists—that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount —he may in a proper case recover punitive damages.'' (Citing cases.)

Certainly if a punitive award of $3,750 was not excessive in the Ritchel case a similar award of like amount, or even more, would not be excessive in this case and we have no hesitancy in saying that the verdict to that extent may be considered reasonable as a punitive award.

In considering compensatory damages, each case must rest upon its own facts. The rule in force in this State is that the amount of the compensation to be allowed for injuries, especially those of a permanent nature, rests largely in the discretion of the jury, and its findings will not be disturbed, unless the award is so disproportionate to the injuries as to strike the mind at first blush that it was the result of passion and prejudice. Kentucky Traction & Terminal Co. v. Roman's Guardian, 232 Ky. 285, 23 S. W. (2d) 272. Appellee was twenty-three years of age, was earning thirty dollars per week, and although he had resumed his former employment, the symptoms he described may result in such condition as will require him to discontinue such work altogether, and the uncontradicted medical evidence is to the effect that his injuries are permanent.

In the case of Gretton v. Duncan, 238 Ky. 554, 38 S. W. (2d) 448, the Court held that a verdict in the amount of $2,000 for a fractured thigh and cut face was not excessive.

In the case of Fry & Kain v. Keen, 248 Ky. 548, 59 S. W. (2d) 3, a verdict of compensatory damages in the amount of $5,000 was upheld, where the injuries consisted of a cut and bruised head, broken collar bone, crushed shoulder blade, and four broken ribs.

A verdict in the amount of $6,000 was held not to be excessive in the case of Saxton v. Tucker, 280 Ky. 777, 134 S. W. (2d) 590, where the injuries sustained consisted of a broken and burned ankle.

In the case of Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902, a verdict in the

amount of $7,000, in addition to a $3,500 settlement with a third party concurrently negligent, was held not excessive, for permanent injuries to the knee and nerves controlling muscles of the foot, and where the plaintiff suffered intense pain.

Other cases could be cited wherein the amount approved exceeded $3,750 for injuries less painful and severe than those suffered in this case. We are, therefore, of the opinion that $3,750 would not be excessive as compensatory damages, if that were the basis of the award in this case. Thus it will be seen that the verdict of $7,500 is not so excessive as to appear at first blush to be the result of passion and prejudice.

Appellant next complains of misconduct on the part of the attorney for plaintiff in his closing argument to the jury by which he claims the jury was unduly influenced to decide for plaintiff. The only notation appearing in the record concerning this argument is the following found in the bill of evidence and exceptions:

> "During the argument to the jury Mr. Smith, Counsel for plaintiff: Mr. King objects to the statement that there were a lot of drunks there. Moves to discharge panel. Overruled. Exception. Jury instructed not to consider statement." "Objection by Mr. King to the statement that all night clubs have bouncers. Sustained." "Objection by Mr. King to Mr. Smith undertaking to describe a blackjack. Sustained."

The court admonished the jury to not consider any of said statements. The evidence fails to support the statement that "there were a lot of drunks there," but we do not see how this could have been prejudicial to appellant. The condition of bystanders cannot possibly have had anything to do with the act of appellant complained of and we are of the opinion that the admonition given by the court was sufficient to protect appellant's rights. Nor can we perceive that the statement that "all night clubs have bouncers" is prejudicial to the rights of appellant. We are of the opinion that the admonition of the trial court was sufficient to protect appellant in that respect. The evidence for appellee discloses that appellant hit appellee with a blackjack which is an instrument so well known that a description of it in the argument to the jury could not be prejudicial to the

rights of appellant and we conclude that there is no merit in this contention.

The last complaint urged for reversal is contained in ground 9 filed in support of a motion for new trial and is expressed as follows:

"Misconduct on the part of the jurors in that one of the jurors immediately after the rendition of this verdict stated that he had finally gotten even with Bert J. King, who was one of the attorneys for the Defendant, and that one of the other jurors stated that Mr. J. M. McGarry, who was the other attorney for this Defendant, should be ashamed of himself for bringing the tight woman he did from Cincinnati, Ohio to testify before the good women of Kenton County, which indicated that said jurors did not decide the case according to the law in the evidence, but they were swayed by their own personal feelings."

Appellant filed the affidavit of a member of the Kenton county bar to the effect that on the first day of December, 1939, he was present in the courtroom and heard part of the trial of this case; that he saw the members of the jury sworn to try the case; that after the verdict had been returned and as he was leaving the building he overheard 4 persons engaged in conversation all of whom were members of the jury; that one of them stated: "That is what McGarry gets for bringing that— woman here before us ladies." That another said: "I finally got even with Bert King." And that another said: "If it was up to me he would have gotten ten thousand dollars, because that was what I wanted to give him." After the filing of the affidavit the trial court re-assembled the jury, called the affiant before it, and asked him to point out the jurors engaged in this conversation. He failed to identify any of them. The trial judge examined the jurors and each denied having made such statements. In that state of case, the trial court must determine the facts, and his decision will not be disturbed unless it is apparent that his findings are without support in the evidence adducted by such examination.

Perceiving no error affecting the substantial rights of appellant, the judgment of the lower court is affirmed.