## Commonwealth v. Webb (two cases).

January 11, 1949.

94

Eldon S. Dummit, Attorney General, C. F. Kelly, Assistant Attorney General, and Charles L. Seale, Special Attorney, for appellant.

J. A. Runyon and F. M. Burke for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

The two cases involved in this appeal arose out of the same accident and were, by agreement, tried before the same jury on the same evidence, the evidence in each case to be considered in the other case so far as applicable. Both suits were authorized by the resolutions of the 1946 regular session of the General Assembly of Kentucky. Acts 1946, cc. 292, 293. The suit in each case was for damages in the sum of $10,000, alleged to have been caused by the negligent operation of one of appellant's trucks by its servant and employee. On the trial of the cases together, the jury brought in a verdict

for $10,000 in favor of appellee, Wendell Webb, and for $5,000 in favor of appellee, J. H. Webb. Appellant prosecutes this appeal from the judgments based upon these verdicts.

## Grounds for Reversal

The grounds relied on for reversal by appellant are (1) that the verdict of the jury was not supported by the evidence and was the result of passion and prejudice; (2) the court erred in admission of incompetent evidence offered by plaintiff and rejection of competent evidence offered by defendant; (3) the verdict of the jury was excessive; (4) the court erred in overruling defendant's motion for peremptory instructions and in giving improper instructions to the jury.

## The Evidence.

This accident happened on August 29, 1945, about five o'clock in the afternoon on Highway 119 about two miles northeast of Pikeville. Appellee, Wendell Webb, 29 years old, was driving a Ford automobile when it collided with a one and one half ton steel body dump truck belonging to the Highway Department of Kentucky and being driven by Kent Snodgrass, an employee of that department. Sitting in the front seat with Wendell Webb was his step-brother, Garrett Price, who was not injured. Sitting alone on the rear seat was appellee, J. H. Webb, who was injured. The weather was clear and the road was dry.

According to appellees' proof, it was shown that Wendell Webb was driving between twenty-five and thirty miles per hour about fifty feet behind a large coal truck which he had followed for about half a mile; that Webb was driving on his right side of the road and when the state truck passed the coal truck, the state truck was traveling about fifty miles per hour and its wheels were wobbling like it was out of control; that immediately after clearing the coal truck, the driver of the state truck cut to his left in front of appellees, then cut his front wheels to the right causing the left rear wheel of the state truck to strike the Webb car near the left front wheel tearing away the wheel and the left side of the body including the door; that Webb's hands were knocked from the steering wheel and his car went about

fifteen feet across the road and stopped; that at the time of the collision, Webb's car was as far to the right of the center of the road in the direction he was traveling as was possible to get on account of the concrete pier erected to protect the embankment at that place; that appellee Webb had been driving trucks and automobiles for about fifteen years.

The above summary of the testimony as to how the accident happened, given largely by the two appellees, was corroborated by Golden Canada, apparently a disinterested witness, who was driving the coal truck behind which appellees were driving. In addition, he testified that he saw the highway truck coming down the road zigzagging from one side of the road to the other and that he had to get off the road to keep from being hit by the highway truck. He testified that the state truck was at least two feet to the left of the center of the highway in the direction in which it was traveling and that he had to get off onto the shoulder of the road to keep from being hit.

Other witnesses for the appellees who arrived at the scene of the accident shortly after it happened testified as to the condition of the Webb car, as to skid marks, broken glass from the Webb car, and marks made by the broken drive shaft of the highway truck, all of which tended to show that the Webb car was on its side of the road and the highway truck off on its left or wrong side of the road when the accident happened.

The only eyewitness testimony for the defense, as to how the accident happened, was Kent Snodgrass, about twenty-one years old at the time of the accident, driver of the state highway truck, who testified that just before he reached the scene of the accident he had slowed down to allow an old man with a push cart to get out of the way; that he then shifted gears and picked up speed to pass the coal truck which he was about to meet when the Webb car came out from behind the coal truck "right into my face;" that he pulled his truck over to his right side of the road as far as he could get due to the fact that there was a power patrol grader along there on the right side of the road; that his truck did not hit the Webb car but, on the contrary, the Webb car hit his truck at the rear wheels; that when the Webb car hit

him, the front wheels of his truck were about four feet and the rear wheels about two feet off the black-top on his own right side.

Other testimony for the defense given by state highway employees and the highway patrolman, who arrived at the scene about half hour after the accident, consisted largely of testimony as to the location of the Webb car and the highway truck after the accident, the skid marks, dust marks, tire tracks, measurements, etc., which tended to indicate from the physical facts that the truck was on its right side and the Webb car was on its wrong side when the accident occurred, thus contradicting plaintiffs' proof to the contrary. This proof also indicated that the Webb car had gone further off the road after the accident and lodged under a shed off the road instead of the rear wheels of the car remaining on the road as plaintiffs' proof had indicated. The highway patrolman and another defense witness testified to seeing three or four beer bottles in Webb's car after the accident although appellees' proof was that there were no bottles in the car at the time of the accident and that Webb, driver of the car, had not been drinking. On rebuttal, plaintiffs' proof showed Snodgrass had picked up some beer bottles from the creek and put them in the Webb car.

There was, of course, considerable proof on both sides of no great importance and it would require too much space to summarize it all. It is quite clear from reading it all, as we have done, and from the above summary of the account of the accident from eyewitnesses, that the proof is highly conflicting. There were two theories of the case outlined by the proof introduced by the respective sides. The plaintiffs' theory is that after the highway truck passed the coal truck, it cut over onto the wrong side and smashed into the Webb car. The defendant's theory is that the Webb car pulled out from behind the coal truck and collided with the oncoming highway truck. Both sides sustain their theory with proof, the eyewitness proof being predominantly in favor of appellees and the circumstantial and physical facts tending to support appellant's theory. It is thus clear that the decision of fact in this conflict of testimony must be for the jury since that is peculiarly the province of the jury. It is our opinion, therefore, that the court

did not err in refusing to peremptorily instruct the jury for the defendant. On the contrary, he would have erred had he done so. Likewise we cannot say that the verdict of the jury was not supported by the evidence or that it was the result of passion and prejudice.

### Incompetent Evidence

Appellee contends that Wendell Webb was not a competent witness to testify as to the value of his damaged car after the collision. We held adversely to this contention in the recent case of Bruner v. Gordon 309 Ky. 29, 214 S. W. 2d 997. In the vast number of questions asked and answered at the trial, to some of which objections were made at the time by plaintiff or defendant, only one error in excluding the answer to a particular question is complained of on this appeal. The information sought by that question had been obtained from the answer to a similar question previously asked of the witness. Even if the court erred in excluding this one question and answer, it was not prejudicial and was not of sufficient importance to justify a reversal.

### Are Damages Excessive?

Appellant contends that the verdict for $10,000 in favor of Wendell Webb and $5,000 in favor of J. H. Webb, both of which include all special damages asked in each case, are both grossly excessive. Wendell Webb was 29 years old at the time of the accident. For two years previous to the accident, he had been employed by a coal company as a coal loader in the mines at wages of $10.00 to $15.00 per day. Previous to that, he had been employed in Detroit in a war plant at $1.05 per hour with overtime pay. He has had two years of high school education and is only qualified for manual labor. His only injury was to the left arm which was completely crushed and rendered practically useless for manual work although he can still drive an automobile. He suffered great pain for several months and the injury to the arm is permanent. The arm, hand and fingers are stiff and withered and are reduced to about one half of their normal size. He spent three weeks in the hospital at Huntington, W. Va., and his arm was kept in a cast for about six months and was removed from the cast for treatment and replaced from time to

time by the orthopedic surgeon by whom he was being treated. Although his arm was not amputated, it is practically useless to him for manual labor, the only kind of work for which he is qualified. The testimony shows his special damages amounted to $375 for his automobile and $425 for hospital and doctors' bills paid and to be paid by him.

J. H. Webb was fifty-five years old at the time of the accident. He is a farmer and dealer in livestock and earned about $2,000 a year. His injuries were confined to the left arm from the elbow down, including his hand, both of which were crushed. The injury to the hand is permanent and at the time of the trial, two years after the accident, the hand was somewhat withered and the fingers stiff. After temporary treatment at the Pikeville Hospital, he was taken to a hospital in Huntington, W. Va., where he remained about two weeks. His arm was placed in a cast and removed from the cast for treatment and replaced about each two weeks for the next six months. He suffered great pain during all this time and he was still suffering pain at times up to the time of the trial. The orthopedic surgeon who treated him testified that he would continue to suffer pain and that the injuries were permanent. Mr. Webb testified that his left hand is practically useless.

In support of its contention that the verdict in each of these cases is excessive, appellant cites and relies on the old case of Louisville & N. R. Co. v. Lowe, 1904, 118 Ky. 260, 80 S. W. 768, 65 L. R. A. 122, in which a verdict for $13,000 for the loss of an arm by an employee was held to be grossly excessive, and the recent case of Commonwealth v. Hall, 305 Ky. 95, 203 S. W. 2d 75, in which it was held that a verdict for $2,500 for a fractured left arm and numerous abrasions over the face and shoulder was not excessive. We do not understand why appellant relies on the latter case since it lends no support to his contention and the injuries were different and much less severe than those in the instant case.

Appellees cite and rely on other cases in which we have upheld as large or larger verdicts for similar or less serious injuries. These include Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. 2d 902; McGraw v. Ayers, 248 Ky. 166, 58 S. W. 2d 378; Heil

v. Seidel, 249 Ky. 314, 60 S. W. 2d 626; Brink v. Kennedy, 286 Ky. 566, 151 S. W. 2d 58, and Aetna Oil Co. v. Metcalf, 300 Ky. 817, 190 S. W. 2d 562, and cases therein cited. In the case of East Tennessee Telephone Co. v. Jeffries, 160 Ky. 482, 169 S. W. 825, a number of cases are collated showing verdicts which had been upheld as not being excessive for the injuries shown in the particular cases. In the light of the decisions in these cases, we do not regard the verdicts in either of the instant cases as being excessive. The amount of compensation to be allowed for permanent injuries rests largely in the discretion of the jury and their verdict will not be disturbed unless it appears at first blush to have been arrived at as a result of passion and prejudice. As was said in the case of Brink v. Kennedy, supra (286 Ky. 566, 151 S. W. 2d 61):

"In considering compensatory damages, each case must rest upon its own facts. The rule in force in this State is that the amount of the compensation to be allowed for injuries, especially those of a permanent nature, rests largely in the discretion of the jury, and its findings will not be disturbed, unless the award is so disproportionate to the injuries as to strike the mind at first blush that it was the result of passion and prejudice."

### Instructions

At the conclusion of the evidence, appellant offered instructions Nos. 1 to 6 in the Wendell Webb case, and instructions Nos. 1 to 4 in the J. H. Webb case. These instructions were refused and instead the court gave instructions A, B, C, D and E in the Wendell Webb case and instructions A, B, C and D in the J. H. Webb case. In its original brief, appellant contends that the court erred in refusing to give instruction No. 1 in the J. H. Webb case and instruction No. 4 in the Wendell Webb case offered by it and, in its reply brief, further contends that the court erred in giving instruction D in the Wendell Webb case. The offered instruction No. 1 was predicated on the idea that if J. H. Webb entered the automobile of his son Wendell Webb, knowing the latter was under the influence of intoxicants, then J. H. Webb was guilty of such contributory negligence as would prevent his recovery of damages. This instruction was proper-

ly refused because there was no evidence that Wendell Webb was drunk or drinking. The only evidence along this line was that J. H. Webb had drunk two or three bottles of beer in Pikeville some time before he entered his son's automobile and the testimony of the state highway patrolman that two or three empty beer bottles were found in the car after the wreck and that the patrolman detected the odor of liquor about the car when he arrived. There is no proof to show that Wendell Webb, driver of the car, had taken any drinks or was drunk and there is positive evidence to the contrary.

The offered instruction No. 4 is predicated on the idea that under appellant's theory of the case and its proof, Wendell Webb violated KRS 189.340(3) by coming from behind the coal truck and colliding with the highway truck. This phase of the case was correctly and clearly stated in instruction "B" given by the court and which clearly set out the duties of Wendell Webb just as instruction "A" had clearly set out the duty of the driver of appellant's truck. Instruction No. 4 was, therefore, properly refused.

Instruction "D" offered by the court in the Wendell Webb case limited him to recovery of special damages totaling $800, as proven, instead of the $1,000, as asked in his petition, but limited total recovery to $10,000, the amount claimed in the petition. Appellant ingenuously contends that since appellee had in his petition, in effect, asked for only $9,000 for his physical injuries and suffering, because he claimed special damages of $1,000, and since the jury allowed him only $800 in special damages, it, in effect, allowed him $9,200 for pain and suffering, which was $200 more than he prayed for . We do not think there is any merit in this contention. The petition had asked for a total of $10,000 damages, the instructions limited recovery to that amount and the jury brought in its verdict for that amount. There was no separation of special and compensatory damages by the jury and nothing to show how it was allocated but it was within the total amount prayed for in the petition. The case of J. N. Youngblood Truck Lines v. Hatfield, 304 Ky. 600, 201 S. W. 2d 567, relied on by appellant is not in point under the facts in this case.

On the whole, we think the instructions given by the court fairly and correctly stated the issue involved under the facts in the case.

After careful examination of the entire record, we find no substantial errors which justify a reversal of either of the cases and they are therefore affirmed.

Judgment affirmed.