## I. C. R. R. Co. v. Beeler.

(Decided March 15, 1911.)

Appeal from Grayson Circuit Court.

1. Personal Injury—Sufficiency of Evidence.—In approaching a crossing plaintiff's horse was frightened by one of defendant's trains and she was thrown from her buggy and injured. She claims the statutory signals were not given. Held that the finding of the jury in her favor upon this question is not flagrantly against the evidence.

2. Physical Examination by Order of Court.—Where plaintiff in an action for damages for personal injuries claims a disturbance of her menstrual period and the falling of her womb as the result of her injuries, and there is no evidence upon this point except her own statements, and the defendant is thus powerless to introduce any evidence to the contrary because her condition is not apparent, the ends of justice will best be subserved by the court's ordering, if properly applied for, a physical examination by a competent physician.

3. Special Damages—Loss of Time—Pleading.—Special damages, such as loss of time, et al., must be specifically pleaded, and unless so pleaded no recovery can be had therefor.

C. L. SIVLEY, MARION A. ARNOLD, TRABUE, DOOLAN & COX and L. A. FAUREST for appellant.

J. H. RICE and H. W. STOY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—REVERSING.

Cubbage's Crossing is a place where the Illinois Central Railroad Company crosses the Leitchfield and Elizabethtown public highway, about half way between Leitchfield and Grayson Springs. On September 6, 1909, Appellee Mrs. L. F. Beeler, was driving in a buggy to her home in Leitchfield. When she reached the crossing her horse was frightened by the passing of one of appellant's trains. The buggy was upset and appellee was thrown to the ground and injured. Charging that the train was going at a high rate of speed and that the statutory signals for the crossing were not given, appellee brought this action against appellant to recover damages for her injuries. The jury returned a verdict in her favor for $500.00. From the judgment based thereon the railroad company appeals.

Appellee claims that, when she got to a point about fifty feet from the crossing, she stopped, looked and listened for the approaching trains. When she got near the track and within a few feet of it, one of appellant's trains, going south, suddenly, and without warning of any kind, ran out of a cut over the crossing. Her horse was badly frightened, and overturned the buggy. She was injured by the fall and was confined to her bed for about three weeks. From that period on she lost a great deal of time from her work, had suffered severe pains, and at the time of the trial was still unable to do her usual work. She claims that, as a result of her injuries

her monthly period was increased from one month to two weeks, and that she suffered from falling of the womb. Two or three days after her injury she sent for a physician, who bandaged her up, and he was of the opinion that there was a partial fracture of one of her ribs. She claims that, at the time the train passed the crossing, the bell was not ringing, nor did she hear any blasts of the whistle, though she was listening for the same.

Carmel Hare and his wife, who were 300 or 400 yards from the crossing, heard no signals given for the crossing. While Hare admits that it was hardly probable he could have heard the signals, his wife testifies that she had her mind upon the coming of the train and did not hear the whistle blow, though she could have heard it if it had been blown.

Lonnie Burns, who was on horseback with a companion, and who was 500 yards from the crossing, also testified that he heard no signals given. He, however, was not paying any particular attention to the train, and admits the signal might have been given without his hearing it.

The evidence for appellant is to the effect that the usual blasts of the whistle were given when the engine was about 275 or 300 yards from the crossing, and when the train came through the cut and the presence of appellee was discovered, certain alarm blasts were also sounded. The bell was ringing automatically at the time. These facts were testified to by the engineer, fireman, conductor, flagman, a special agent, and the porter of the train. Their testimony is corroborated by that of Henry Walker and Jeff Board, who were in a field adjoining the railroad right of way. It was also shown, on cross-examination of appellee, that she had a crate of 17 dozen tin cans attached to the rear of her buggy, and that the road near the railroad track at the crossing was covered by rocks.

It is earnestly insisted that, because the noise from the cans while the buggy was proceeding over the rocks would naturally tend to drown the signals of the approaching train, and as appellee's witnesses were at a considerable distance from the crossing, the testimony for appellee, on the question of whether or not the statutory signals were given, is so outweighed by the greater number of witnesses who testified for appellant

that we should say the verdict is flagrantly against the evidence. While the evidence rather preponderates in favor of appellant, we are not disposed to disturb the finding of the jury on the ground that it is palpably against the evidence.

Appellee claims that she had falling of the womb and menstrual trouble, both of which resulted from the injuries she received when she fell out of the buggy. Her physician while on the stand was permitted, over the objection of appellant, to testify that the injuries would be more than likely responsible for the condition coming on immediately afterwards. It is contended that this testimony was improperly admitted. In support of this position the case of Aetna Life Ins. Co. v. Kaiser, 115 Ky., 539, is cited. In that case, however, the physician was permitted to give his opinion as to whether or not the death of the insured was self-inflicted. Manifestly, that case was not one for expert testimony, and this court so held. Here the question was, whether a certain character of injury would produce a certain kind of result; and upon such a question the opinion of a competent physician may be given.

At the January term of the court, appellant filed the affidavit of its attorney setting out the importance of having an examination made by some competent physician or surgeon, in order that the real condition of appellee might be made to appear; and asked the court to appoint a physician and order that such an examination be made. Appellee objected to this. The court refused to pass upon the motion at that term, but gave appellee to the next term in which to show cause why the examination should not be had. At the April term appellee filed her own affidavit and that of Mrs. Lizzie Sertell, to the effect that a medical examination could not be made to ascertain the extent of her injuries without offending decency and inflicting severe pain. Appellee further stated that appellant had taken her deposition and that her deposition disclosed the injuries received by her. Neither of these affidavits stated what injuries appellee had received, or in what way the examination would cause pain. On the trial of the case it developed that appellee claimed to have a falling of the womb and a disturbance of her menstrual period. No physician had made an examination to determine whether she in fact had these troubles; her family phy-

sician, Dr. Hampton, who testified upon the trial of the case, had only her word for it. Dr. Hampton also stated that he could easily determine by a physical examination whether the troubles which appellee claimed to have existed or not.

In discussing, in the case of Belt Electric Line Co. v. Allen, 102 Ky., 551, the question when and under what circumstances the court should order a physical examination of the plaintiff in an action for personal injury, this court laid down the following rule:

"1st. That trial courts have the power to order surgical examination by experts of the person of the plaintiff, who is seeking to recover for personal injury.

"2nd. That the defendant has no absolute right to have an order made to that end, but that a motion therefor is addressed to the sound discretion of the court.

"3rd. That exercise of that discretion will be reviewed on appeal and corrected in case of abuse.

"4th. That the examination should be ordered and had under the direction and control of the court, whenever it fairly appeared that the ends of justice require the disclosure or more certain ascertainment of facts which can only be brought to light or fully elucidated by such examination, and that the examination may be made without danger to plaintiff's life or health, and without the infliction of serious pain.

"5th. That the refusal of the motion, when the circumstances present a reasonably clear case for examination under the rules stated, is such an abuse of the discretion lodged in the trial court as will demand a reversal of the judgment in plaintiff's favor."

And in the more recent case of Louisville & Nashville R. R. Co. v. Simpson, 111 Ky., 754, where the judgment below was reversed because of the refusal of the trial court to order such an examination, this court said:

"The right to demand such a personal examination of the injured member of one suing for permanent personal injuries was first before this court and decided in Belt Electric Line Co. v. Allen, 19 Ky. Law Rep., 1656. We then held that the weight of authority was to the effect that 'such physical examination may be demanded in cases where discovery of the truth will more likely result with than without the examination, and the ends of justice be thereby better subserved.' The rules of practice governing such examinations were also declared in

that case, providing among other things, that the ordering of such an examination was within the sound discretion of the trial judge, but such discretion was reviewable on appeal. In this case the injury sued for was not apparent; whether it existed in fact was disputed. To permit the plaintiff to testify that the member was injured, and that the injury was permanent, and to deny other competent witnesses, who were specially skilled in treating such injuries, to examine the hand, and to demonstrate if they could that it was not in fact injured at all, was an abuse of that discretion which, it was said in the Belt Line Co. v. Allen case, was lodged with the trial judge. And for that error the judgment must be reversed.''

Here, then, we have a case where the injury complained of is not apparent. The only person who gives any direct evidence as to her condition is the appellee herself. Her physician did not make any physical examination, but simply took appellee's word for her condition. Without a physical examination, appellant had no means of controverting any statement which appellee might make. The character of her injury did not appear, and it was not a case from which the jury could otherwise determine the extent of her injury. In our opinion, this is a case where the ends of justice will be better subserved and the truth more likely discovered by ordering a physical examination. This the trial court will do upon the next trial, if asked for by appellant.

Appellee did not allege in her petition that she had lost any time on account of her injury. The court, however, permitted her to prove that she did all the household work, some farm work, and had worked for others for hire before the accident, but had been unable to do any work after she was hurt. The court, in its instruction on the measure of damages, also permitted a recovery for the value of time lost, if any. This was error, for this court is committed to the doctrine that special damages, such as loss of time, physicians' bills, bills for medicine, etc., must be specially pleaded, and unless so pleaded no recovery can he had therefor. (Baries v. Louisville Electric Light Co., 118 Ky., 830; Louisville & Nashville R. R. Co. v. Farris, 100 S. W., 870; Cumberland T. & T. Co. v. Overfield, 127 Ky., 548; Jesse v. Schuck, 11 Ky. Law Rep., 463; Newman on Pleading and Practice, section 345; Southern Ry. Co. v. Ware, 84

Ky., 267; Louisville & Nashville R. R. Co. v. Reynolds, 24 Ky. Law Rep., 1402.)

As this case must be reversed and remanded for a new trial, we deem it proper to say that the trial court should omit the instruction authorizing a recovery of punitive damages.

Judgment reversed and cause remanded for a new trial consistent with this opinion.