## Louisville & Nashville Railroad Company v. Ritchel.

(Decided June 4, 1912.)

### Appeal from Bourbon Circuit Court.

1. Railroads—Separate Coach Law—Assignment of Passengers—Acts of Conductor—Liability of Company For.—A railroad company is liable in damages for the acts of its conductor in improperly assigning a white passenger to the coach provided for colored passengers, and for behaving towards such passenger in an insulting manner.

2. Damages—Mortification and Humiliation of Feeling.—In an action for damages by white passenger for being assigned to and required to ride in a coach provided for colored passengers, mortification and humiliation of feeling are an element of damage.

3. Damages—Compensatory—Punitive—Verdict of Punitive Damages Only.—Where plaintiff has suffered an injury for which compensatory damages, though nominal in amount, may be awarded, the jury may, in a proper case, award punitive damages, and a verdict for punitive damages only will not be set aside because the jury failed to return a verdict for compensatory damages.

4. Damages—Excessive.—In an action for damages by a young white girl for being improperly assigned to and required to ride in a coach provided for colored passengers, by the conductor, whose manner and treatment of her were rough and insulting, and the case, therefore, one where punitive damages might be awarded, Held, that a finding of $3,750 in plaintiff's favor was not excessive.

EMMETT M. DICKSON, BENJAMIN D. WARFIELD for appellant.

J. EMBRY ALLEN and TALBOTT & WHITNEY for appellee.

Opinion of the Court by William Rogers Clay,
Commissioner—Affirming.

Alleging that she was a white person, and was com-
pelled by a conductor on one of defendant's trains to
ride in the coach set apart for colored people, from Mil-
lersburg, Kentucky, to Paris, Kentucky, and that in com-
pelling her to go from the white coach into the colored
coach, the conductor handled her in a rough and violent
manner, and that his demeanor towards her was abusive
and insulting, plaintiff, Rella Ritchel, brought this action
against the Louisville & Nashville Railroad Company to
recover damages. The jury returned a verdict for $3,-
750. The railroad company appeals.

Plaintiff is a Jewess, and was born in Kief, Russia.
At the time of the injury complained of, she was about
20 years of age. She came to this country when she was
nine years of age, and took up her residence with her
parents at Centerville, Iowa. She attended the public
schools of that city, and when 17 years of age was gradu-
ated from the high school. For a while she taught in
the public schools of Iowa. In 1907, she obtained a posi-
tion as the teacher of English in the public schools of
Kokomo, Indiana, which position she still holds. During
the summer vacation of 1910, she obtained employment
with the Central Lyceum Bureau, of Indianapolis, Indi-
ana. In this capacity she traveled through the country
and visited the different schools and colleges for the pur-
pose of placing lecture courses and making appointments
for the lecturers having contracts with the Central Ly-
ceum Bureau. During the months of June, July and
August, 1910, her duties called her to the State of Ken-
tucky. While here she visited the schools of Mt. Ster-
ling, Winchester, Paris, and other places. On July 9,
1910, she went to Millersburg, and called on Prof. Fisher,
of the Millersburg Female College, and conferred with
him and his son in reference to a lecture course at that
institution. Upon leaving Prof. Fisher, she went to a
hotel conducted by a Mrs. Proctor, and remained there
until train time. About two o'clock in the afternoon she
went to the railroad station and got on one of defend-
ant's passenger trains proceeding from Millersburg to
Paris, and took her seat in the white coach. While look-
ing out the window, she held her ticket in her hand. The
conductor passed by and grabbed her ticket out of her
hand. Pretty soon the conductor returned, and glaring

at her, hollered out: "You must get out of here." Plaintiff said: "Why?" The conductor said: "You are colored, and everybody in this car knows you are colored." Plaintiff said: "I am not. I am a Russian Jewess." The conductor said: "You can't come that on me, you know." Plaintiff said: "I am traveling for the Central Lyceum Bureau. I place such men as Bob Taylor, and you know I couldn't do that kind of work if I were colored." Plaintiff then reached over and got her papers out of her grip and offered to show them to the conductor. The conductor said: "Never mind that. You are colored. You know it, and everybody knows it, and you are going to get out of here." Plaintiff said: "I am not, I am not." With that the conductor grabbed her out of the seat and pushed her ahead of him. He put his hand on her back, and when she got to the entrance she stopped and said: "I am not going in there." The conductor said: "Yes, you are." He then gave her another push, and pushed her on into the other coach, saying: "This is the place for you." With that she pushed through the car. The conductor shoved her with such violence she had to catch hold of the backs of seats to keep from falling. When she got into the car she felt dazed and sick, and was greatly distressed and humiliated. Upon reaching Paris, plaintiff changed cars and went into the white coach, where she was permitted to remain until she reached Lexington. When she reached the Reed Hotel at Lexington, she was so nervous and unstrung that she suffered a complete collapse.

Plaintiff's statements as to the occurrence on the train are corroborated by M. J. Esenbach, a young man who lives at Lexington, Ky., and who came to her assistance at Paris and assisted her into the white coach. Her statements as to the rough and violent manner of the conductor toward her in conducting her into the colored coach, are verified by the statements of four colored persons who were occupying that coach. Plaintiff's statements as to her condition when she reached the Reed Hotel at Lexington are corroborated by the testimony of the hotel porter and W. H. Hart, the proprietor of the hotel. Her statements as to the effect of the occurrence upon her health and nervous system are corroborated by Dr. H. C. Thomas, Superintendent of Public Schools, at Kokomo, Indiana, and by Mrs. Mary White Slater, of Ironton, Ohio, a lady who is engaged in writing stories for magazines. A number of prominent citizens of Iowa

and Indiana testified by deposition to plaintiff's nationality, and to the fact that she was a young lady of refinement and education, and always associated with the white race. They also testified that while she was a person of dark complexion and dark hair and eyes, her features were characteristic of the Jewish race, and bore no resemblance to those of a person of the colored race. In addition to those who testified by deposition, Dr. Thomas, Mrs. Slater and Mr. Stephen M. Reynolds, a lawyer and lecturer, of Terre Haute, Indiana, besides C. C. Fisher, president of the Millersburg Female College, and his son, G. T. Fisher, were present at the trial and testified to the same effect.

For the defendant, the conductor, station agent and operator, and one or two others, testified that plaintiff looked like a mulatto. The conductor further testifies that after he took up plaintiff's ticket, and had gotten to about the middle of the car, a passenger on the left-hand side said: "Cap, you have got a colored lady back there." When he looked at plaintiff he believed that she was a colored person. On returning to her seat, he leaned over and said: "Haven't you made a mistake, and got into the wrong car?" Plaintiff said: "WHY?" He then repeated the question, and plaintiff said: "I am no negro." One of the passengers then said: "She is a negro. She was standing talking to a colored man or two colored men at the station when the train pulled in." Plaintiff never offered to show him any papers, but simply denied that she was a negro. His manner towards her was not abusive or insulting, nor did he put his hand on her. On the contrary, he preceded her into the negro coach. When he told the plaintiff it was necessary for her to go into another coach, she said: "I will go over into that car, but I won't take a seat." One of his hands was injured, and he carried plaintiff's valise in the other hand. The witnesses for the defendant also testified that plaintiff's complexion at the time of the trial was much lighter than it was on the occasion when she was a passenger from Millersburg to Paris.

In rebuttal, it was shown that plaintiff's complexion was just the same when the trial occurred as it was when she was a passenger, with the exception that her cheeks were not so rosy. It was also shown that the colored person to whom she was talking at the station was the porter.

It also developed on cross-examination of Dr.

Thomas that plaintiff had had an attack of grippe after the incident complained of, and this might have contributed to her nervous condition.

For defendant, it is insisted that the railroad company is not liable for the act of its conductor in wrongfully compelling a white passenger to ride in the coach provided for colored people, since the conductor, in assigning passengers to the respective coaches provided for colored and white persons, acts not as the agent or employe of the railroad, but pursuant to the mandate of the statute. This contention overlooks the fact that the whole purpose of the separate coach law is to require a carrier not only to provide separate coaches for colored and white passengers, but to see that the law is made effective by assigning the passengers to the coaches to which they belong. While it is true that the statute imposes a penalty on the conductor for a failure of duty in this respect, this in no wise relieves the carrier of its responsibility under the law. In making the conductor liable to a fine for failure of duty, the purpose of the lawmakers was to render the act more effective. The duty of assigning passengers to the proper coaches is not imposed upon the conductor individually, but is imposed upon him as the conductor of the train. In other words, it is only because of the position that he occupies that the statute imposes upon him a penalty for a failure of duty. In executing the statute, or in failing to execute it, he acts as the agent or the representative of the railroad company, and the doctrine of respondeat superior necessarily applies. Southern Railway in Kentucky v. Thurman, 121 Ky., 716; Quinn v. L. & N. R. R. Co., 98 Ky., 611.

Under the instructions of the court, the jury were authorized to find either compensatory or punitive damages, and to state in their finding the amount of each, if any. The jury returned a verdict for punitive damages only. It is, therefore, insisted that as there was no finding of compensatory damages, the verdict of punitive damages should not be permitted to stand. In other words, it is insisted that actual damage is an essential predicate to the imposition of punitive damages. It is true that there are respectable authorities which appear to hold that punitive damages cannot be awarded when the actual injury is merely nominal. Stacy v. Publishing Company, 68 Maine, 287. In our opinion, however, this view is not correct, and does not agree with the

great weight of authority. The correct rule, we think, is that if a right of action exists; that is, if the plaintiff has suffered an injury for which compensatory damages might be awarded, although nominal in amount, he may in a proper case recover punitive damages. Sedgwick on Damages, 8th Ed., Vol. 1, Sec. 361. Alabama Great Southern Railroad Co. v. Sellers, 93 Alabama, 9, 9 Southern, 375; Hefley v. Baker, 19 Kan., 11; Dosker v. Western Union Telegraph Co., 57 S. E. (S. C.), 671.

In this case the court gave the following instruction on the measure of damages:

"If you find for plaintiff, the measure of her recovery, if any, is such a sum of money as will fairly compensate the plaintiff for the trouble and inconvenience of entering the coach for colored passengers, and riding therein from Millersburg, Kentucky, to Paris, Kentucky, and if you believe from the evidence that the conductor was insulting to her by word or act or either, you may or may not in your discretion award punitive damages not exceeding in all the sum of $25,000, the amount claimed in the petition."

This instruction was evidently based upon the instruction directed to be given in the case of Southern Railway in Kentucky v. Thurman, supra. In that case, however, the plaintiff merely left the white car, and was not required or compelled to ride in the colored coach. She afterwards returned to the white coach. The court was evidently of the opinion that under the peculiar facts of that case, plaintiff was not entitled to recover anything for mortification or humiliation of feeling. In this case, however, plaintiff was not only compelled to go into the colored coach, but to ride with the negroes from Millersburg to Paris. Under such circumstances, mortification and humiliation of feeling are necessarily one of the elements, and one of the chief elements, of damage.

Even under the instruction as given, however, plaintiff might have recovered nominal damages for the injury which she had at the hands of defendant, and that being true, she was entitled to recover punitive damages.

It is also contended that under the rule announced in this State, punitive damages must bear some relation to the damages allowed by way of compensation. Such, however, is not the rule. The doctrine is that punitive damages must bear some relation to the injury and the cause thereof. Louisville Southern Railway Co. v.

Minogue, 90 Ky., 369; L. & N. R. R. Co. v. Roth, 130 Ky., 767; Buford v. Hopewell, 140 Ky., 666. As the jury, even under the instructions as given, might have awarded compensatory damages, though nominal in amount, and under a proper instruction, might have awarded damages for humiliation and mortification of feeling, we conclude that the fact that the jury returned a verdict for punitive damages only, furnishes no just reason why the verdict should not be allowed to stand, since, under the rule in force in this State, punitive damages, when allowed, are given as compensation to the plaintiff, and not solely as a punishment of the defendant. Tennessee Central Railroad Co. v. Brashear, &c., 29 Ky. L. R., 780, 93 S. W., 349.

While the verdict is large, we cannot say that it is so large as to appear at first blush to be the result of prejudice or passion on the part of the jury. Plaintiff was a young woman of culture and refinement. She was traveling alone in a distant State. If it be true that the conductor handled her as roughly as she claims, and his manner towards her was as insulting as she and her witnesses claim it was, and in addition to that she was compelled to ride in the coach and suffered the nervous shock which her witnesses say did result therefrom, we cannot say, in a case like this where punitive damages may be recovered, that a verdict of $3,750 is excessive.

By its instructions, the court told the jury in substance that plaintiff could not recover if at the time she was required to enter the coach provided for colored passengers, the conductor in good faith believed, and in the exercise of ordinary care had the right to believe, she was a woman of color, and was not insulting to her. This instruction, and the converse thereof, properly presented the law of the case. The only error in the instructions was in the instruction on the measure of damages, and was in favor of defendant.

Finding no error in the record prejudicial to the substantial rights of the defendant, the judgment is affirmed.