## Maddix et ux. v. Gammon.

March 9, 1943.

A. N. Cisco and W. B. Arthur for appellants.

J. S. Fullerton and Joseph Cohen for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This is an appeal from a judgment on a verdict awarding the appellee, Mrs. Anna Gammon, $100 as actual damages and $400 as punitive damages on the charge that the appellants, Mr. and Mrs. Fred Maddix, forcibly ejected her and her two children from their home. The appellants insist that (1) they were entitled to a peremptory instruction; (2) the evidence does not sustain the verdict for compensatory damages; (3) there should have been no instruction for punitive damages; and (4) the verdict strikes the mind at first blush as being one resulting from passion and prejudice on the part of the jury.

Since all of the grounds are somewhat related, we will discuss them together. The appellants own an apartment building on the rear of the property where they make their home. On September 23, 1940, Mr. Maddix rented the second story apartment, furnished, to Mr. Gammon, with the understanding that the rent of $7 per week was to be paid in advance, and that Mr. Maddix reserved the right to move the Gammon family out upon their failure to pay the rent. The first week's rent was paid as per the agreement. When the rent for the second week became due Gammon paid $4 on Monday and did not pay the remaining $3 until the following Wednesday. Maddix said that he told Gammon at that time that he had not lived up to his agreement and that he would give him until October 7 to move out. When he approached Gammon on Monday, October 7, he said he would pay him the following day. On Tuesday night he went to see Gammon, but he had not returned home. He told Mrs. Gammon that, if the rent was not paid by Wednesday morning, he would set them out of the apartment. On Thursday morning, October 10, he went to the Gammon apartment, accompanied by his wife, for the purpose of ousting the Gammons. There is sharp conflict in the proof as to what transpired between the Maddixes and Mrs. Gammon at the time of the ousting.

The Maddix version is that they went to the apartment about 7:30; when they arrived Mrs. Gammon opened the door; they told her they were sorry they had to put her out; Mrs. Maddix pointed out the Gammon possessions and Mr. Maddix set them out on the porch; Mrs. Gammon and her two children left without resistance; they were fully clothed; a bird cage was removed to the yard because there was not room on the porch for it; after it was placed there it blew over; when this happened the oldest Gammon boy began striking at Mr. Maddix and cursing him; Mrs. Gammon cursed him also, saying, "* * * You will pay for this"; there was no resistance or trouble until the bird cage turned over; Mr. Maddix then went to work; Mrs. Gammon went to the police station and returned with three policemen who told Mrs. Maddix that, if she did not let them have the key to put the Gammons back in their apartment, they would break the door down; and the Gammons stayed in the apartment until October 14 without paying any rent.

The testimony for Mrs. Gammon is that Mr. Maddix came to the apartment on October 9, and said he wanted his rent or his apartment; she told him her husband was not at home, but she was expecting him soon, and that he would pay the rent when he returned; on the following morning the Maddixes came to her apartment between 6 and 6:30 a. m., and before she and the children were out of bed and dressed; Mr. Maddix said that he had come to take possession of the apartment; she told him she would get out if he would give her time to get herself and the children dressed; he refused to do this, and forced her against her will to get out into the cold without sufficient clothing to keep warm; when Mrs. Maddix showed Mr. Maddix the Gammon belongings he put them in boxes and pitched them out on the ground; she left and went to the police station and came back with three policemen who placed her in the house; she did not curse Mr. Maddix, and, if her son did, she did not hear it; and Mr. Maddix struck one of her sons on the arm, which caused him to cry. One of the policemen substantiated Mrs. Gammon's testimony to the effect that she and her children were only partially clothed; that the morning was cold; that some of their belongings had been thrown into the yard and broken; and that the Gammons were placed back in the apartment.

It is clear that this was a case for the jury. While the appellants contend they rented the apartment to Gammon with the understanding that they could move his family out if the rent was not paid when due, by no stretch of the imagination could this be construed to mean that they could oust them in an unlawful and violent manner. If we accept, as did the jury, Mrs. Gammon's version of the incident, Maddix ignored her offer to get out as soon as she and the children dressed themselves, entered the apartment and forced them out while they were partially clothed, and threw their personal belongings into the yard. As pointed out in Perkins v. Ogilvie, 148 Ky. 309, 146 S. W. 735, a landlord, who unlawfully and forcibly enters the premises and evicts the tenant and his family, is liable in damages for the tenant's sense of shame and humiliation in having his wife and family turned into the streets. There were persons who saw the Gammons evicted. They said that they were cold and only partially dressed, that their belongings were thrown into the yard, and some of them broken, and that Mr. Maddix struck one of the boys. Under these circumstances, which the jury was warranted to accept, how can it be said that an award of $100 for compensatory damages was excessive? See National Bond & Investment Co. v. Whithorn, 276 Ky. 204, 123 S. W. (2d) 263, where an award of $700 for compensatory damages was upheld in an action involving the repossessing of a car by the Investment Company. The compensatory damage allowance in this case in no sense shocks our conscience at first blush as being the result of passion and prejudice on the part of the jury. Brink v. Kennedy, 286 Ky. 566, 151 S. W. (2d) 58; Louisville & N. R. Co. v. Roth, 130 Ky. 759, 114 S. W. 264.

Punitive damages, sometimes referred to as ''smart money,'' are proper where a wrongful act is done without reasonable excuse, and with the wanton and willful disregard of the rights of another, so that the jury would be warranted in finding that the acts were done maliciously. National Bond & Investment Co. v. Whithorn, supra. We do not adhere to the rule that the award for punitive damages must bear some reasonable relation to the actual damages sustained, but rather our position is that, where one has suffered an injury for which compensatory damages might be awarded, although nominal in amount, he may in a proper case re-

cover punitive damages. Brink v. Kennedy, supra, and cases cited therein. Of course, this is not to say that the sky is the limit in an award for punitive damages, but we have no hesitancy in saying that the award in the case at bar in no sense shocks our conscience as being the result of passion and prejudice.

It follows that it is our view that the judgment should be and it is affirmed.