Hillard **HENSLEY**, Appellant,

v.

**PAUL MILLER FORD, INC.,**
Appellee.

Court of Appeals of Kentucky.

May 3, 1974.

George M. Combs, Lexington, for appellant.

Harry B. Miller, Miller, Griffin & Marks, Lexington, for appellee.

GARDNER, Commissioner.

Hillard Hensley purchased from Paul Miller Ford a 1969 Mustang Mach I, subject to his obtaining a loan. As part of the consideration Hensley was to trade in his 1966 Cyclone GT. The Cyclone was registered in the name of Geneva Turner, Hensley's mother, because Hensley was only 19 years of age. The contract with Ford, complete on its face, was signed "Geneva Turner by Hillard Hensley." According to Hensley he left his Cyclone on Ford's parking lot while he and his mother went to Monarch Investment Company to see about financing the balance owed. He was unsuccessful and when he returned to Ford's parking lot about two hours later he discovered that his car was missing. Hensley testified that his conversation with the salesman was as follows:

" 'Where's my Cyclone, and I'll just find somewheres else to trade. I just won't trade.' So, he said, 'We've already sold it.' I said, 'What do you mean?' And he said, 'Well, I thought you all was going to buy it and Monarch told me that they would finance the whole complete deal.' So, he gets on the phone with Monarch, and I don't know what he says cause he's in the other room, and he came back out and said, 'Go on and take the car.' He said, 'I'm going to get you the other $400.00 at another finance company.' I told him I didn't know about that. And then I said, 'Where's my property out of my Cy-

clone?' My Mag tires . . . my Mag wheels and my tires was not to be traded; my stereo and my tapes and my tools was not to be traded. It was to come out of the car when I . . . when he appraised the car. He appraised the car with that stuff off of it."

Hensley also testified that about two weeks earlier his negotiations with Ford for a more expensive car failed to materialize because he was unable to obtain a loan.

Ford's relation of the happenings varies in some respects from Hensley's, one of which was that Ford insisted that the personal property in Hensley's car was to become Ford's property. However, Ford promised to retrieve the personal property and urged Hensley to use the Mach I, which Hensley did, because, as he said, he needed it to drive to work. Ford contacted Hensley several times to obtain a bill of sale but Hensley failed to produce the papers. After a couple of weeks the would-be purchaser of Hensley's car returned it to Ford in a damaged condition and with the personal property missing. Hensley used the Mach I for a few weeks when Ford "repossessed" it while it was in the parking lot where Hensley worked.

A suit instituted by Hensley against Ford resulted in a jury verdict and judgment in favor of Hensley for $22,102.85, of which amount $2,102.85 was for compensatory damages and $20,000 was for punitive damages. Subsequently the trial court sustained Ford's motion for a judgment notwithstanding the verdict as to the award of $20,000 for punitive damages, but conditionally granted Ford's motion for a new trial pursuant to CR 50.03 in the event the judgment notwithstanding the verdict was later reversed. The trial court was of the opinion that the evidence fell short of the requirements necessary to sustain a judgment for punitive damages, but that if he was in error and the judgment was reversed, a new trial should be granted because the verdict of $20,000 for punitive damages was excessive.

We believe the trial court was in error in deciding as a matter of law that Hensley was not entitled to recover punitive damages. Just what elements are necessary in determining whether damages should be awarded are not well established. The very nature of the wrong seems to defy a precise explanation. We have said in Ashland Dry Goods Co. v. Wages, 302 Ky. 577, 195 S.W.2d 312, 315 (1946):

> "Punitive damages are damages other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct. The purpose of awarding punitive damages, sometimes called 'smart money', is to punish the person doing the wrongful act and to discourage such person and others from similar conduct in the future. Such damages are proper only when the wrongful act is wanton, malicious, or reckless. There must be a showing that the acts were either willful or malicious or that they were performed in such a way as would indicate a gross neglect or disregard for the rights of the person wronged."

In accord are Bisset v. Goss, Ky., 481 S.W.2d 71 (1972), and Louisville & N. R. Co. v. Jones' Adm'r., 297 Ky. 528, 180 S.W.2d 555 (1944). In 22 Am.Jur.2d, Damages § 251, pp. 343 et seq., it is written:

> "Accordingly, it is the general rule that exemplary damages are not recoverable for mere negligence or for a mere omission of duty unless a statute so provides. If, however, the injury complained of is the result of the defendant's gross negligence or his recklessness, most authorities permit the recovery of exemplary damages."

The rule is a bit more limited in Prosser, Law of Torts 4th Ed., § 2, page 9, where it is said: "Where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action 'punitive' or 'exemplary' damages, or what is sometimes called 'smart money.' Such damages are given to the plaintiff over and above the full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." In any event, there must be more than a wrong resulting in damages. In the present case there is no contention that Ford intended to harm Hensley.

We believe the case should be decided in the light of Ashland Dry Goods Co. v. Wages, supra, that is, whether Ford's acts were performed in such a way as to indicate a gross neglect or disregard of the rights of Hensley. Considering the evidence most favorably to Hensley, which must be done upon the motion for a judgment notwithstanding the verdict (Sutton v. Combs, Ky., 419 S.W.2d 775 (1967)), we find that within two hours after Hensley took the Mach I for a test run, and to see if he could obtain a loan, Ford sold the Cyclone without legal title and with the understanding that it would not be sold until Hensley completed the financing arrangements. It is also noted that Ford was aware of Hensley's inability to obtain a loan for the purchase of a car a few weeks before. According to Hensley it was understood that the personal property in the car was not included in the trade, yet Ford sold it too. All in all, we are of the opinion that the evidence warranted a finding that Ford acted with gross neglect or disregard for the rights of Hensley.

We cannot say, however, that the trial court erred in conditionally granting a new trial on the ground that the verdict was excessive. CR 59.01(4). This court has said in Ashland Dry Goods Co. v. Wages, supra, that the purpose of awarding punitive damages " * * * is to punish the person doing the wrongful act and to discourage such person and others from similar conduct in the future." See also Harrod v. Fraley, Ky., 289 S.W.2d 203 (1956). A slight variance in this rule is found in Louisville & N. R. Co. v. Roth, 130 Ky.

759, 114 S.W. 264 (1908), wherein we said:

"* * * punitive damages are awarded as a civil punishment inflicted upon the wrongdoer, rather than as indemnity to the injured party, although, as he will be the beneficiary of the punishment inflicted, it might with much propriety be said that they are allowed by way of remuneration for the aggravated wrong done."

According to Restatement of the Law, Torts, § 908(1), page 554:

" 'Punitive Damages' are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct."

 That does not mean, however, that the amount of recovery may be determined without considering the seriousness of the injury and the culpability of the one causing the injuries. While there is a difference in the wording of our cases, we perceive the rule to be that an *award* of punitive damages need not bear a proportional relationship to the *award* of actual damages. Maddix v. Gammon, 293 Ky. 540, 169 S.W.2d 594 (1943); Engleman v. Caldwell & Jones, 243 Ky. 23, 47 S.W.2d 971 (1932); Wigginton's Adm'r v. Rickert, 186 Ky. 650, 217 S.W. 933 (1920); Louisville & N. R. Co. v. Ritchel, 148 Ky. 701, 147 S.W. 411 (1912). But punitive damages must bear some relationship to the injury and the cause thereof. See Louisville & N. R. Co. v. Ritchel, supra, 148 Ky. 701, 147 S.W. 411 (1912); Buford v. Hopewell, 140 Ky. 666, 131 S.W. 502 (1910); Louisville & N. R. Co. v. Roth, supra, 130 Ky. 759, 114 S.W. 264 (1908); Louisville South R. Co. v. Minogue, 90 Ky. 369, 14 S.W. 357 (1890). This is the interpretation given to the Kentucky rule by at least two United States courts of appeals. See Kidd v. Burlew (6th Cir. 1969), 407 F.2d 204, and Flame Coal Company v. United Mine Workers of America (6th Cir. 1962), 303 F.2d 39.

 By applying this rule to the instant case we conclude that although the punitive damages ($20,000) might appear to be out of proportion to the compensatory damages ($2,103.85), the disproportion is not a factor to be considered. We are concerned, however, with the question of whether the verdict was excessive in light of the facts of the case—that is, whether there was sufficient relationship of the punitive damages to the injury and the cause of it to justify the largeness of the verdict. We have repeatedly said that this court will not overturn the granting of a new trial unless the court has abused its discretion or clearly erred. City of Louisville v. Allen, Ky., 385 S.W.2d 179 (1964). This consideration must be balanced against the well-established rule that the jury has a wide discretion in awarding punitive damages. The problem was well stated long ago in Louisville South R. Co. v. Minogue, supra, 90 Ky. 369, 14 S.W. 357, 358 (1890):

"It is impossible to measure with anything like absolute certainty the amount of punitive damages proper in a case, or the extent of some of the elements of those which are compensatory. The opinion of a jury has been, and properly, no doubt, regarded as the best means of even a fair approximation, and every verdict should be treated *prima facie* as the result of honest judgment upon their part. They are the constitutional triers of the facts of a case, and courts should exercise great caution in interfering with their verdicts. Litigants must not be left, however, to their arbitrary will, and be without remedy in cases where verdicts can be accounted for only upon the theory that they are the result of an improper sympathy, or unreasonable prejudice. In such cases it is one of the highest duties of a court to interfere; otherwise great wrongs will often result, and the party be remediless. Whether it should do so is more easily determinable in a case where compensatory damages only are allowable, because they in part

admit of exact measurement. In such cases, this court has often reversed the jury's finding. We see no reason why it should not do so in a case like this one, but with increased caution, perhaps."

Obviously decisions must be made on a case-by-case basis.

After our having carefully considered all of the facts and having determined that there was not a sufficient relationship of the punitive damages to the injury and the cause thereof, we are of the opinion that the trial court did not abuse its discretion in granting a new trial on the ground that the verdict was excessive.

Ford contends that although the trial court sustained its objection to Hensley's counsel's statement to the jury alluding to the financial conditions of Ford and Hensley, and although the court admonished the jury not to consider the remarks, the jury was prejudiced, which was reflected by the large verdict. Hensley argues on the other hand that he was entitled to show the respective financial conditions and cites authorities of other jurisdictions. Since the case is being reversed for another trial, we think it advisable to say that we reaffirm our former cases which hold that in actions for punitive damages the parties may not present evidence or in anywise advise the jury of the financial conditions of either side of the litigation. Givens v. Berkley, 108 Ky. 236, 56 S.W. 158 (1900); Shields' Adm'rs v. Rowland, 151 Ky. 822, 152 S.W. 943 (1913).

The judgment is reversed as to that part deciding that Hensley was not entitled to punitive damages and affirmed as to that part conditionally granting a new trial. The judgment is affirmed as to the compensatory damages awarded. The case is remanded for a new trial only on the issue of the amount of punitive damages to be awarded Hensley.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, STEINFELD and STEPHENSON, JJ., concur.

REED, J., concurs, stating:

I agree that the opinion represents the current law in Kentucky. I would, however, seriously consider abolishing punitive damages as allowable. As long as we retain the right to recover punitive damages, the rule followed by most other jurisdictions that evidence of the financial condition of the defendant is admissible is the better view because it is consistent with the flimsy reason given for the allowance at all—deterrence. To exclude such evidence is inconsistent with the claimed purpose of deterrence.