Leon WAHBA, Appellant,

v.

DON CORLETT MOTORS,
INC., Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1978.

Franklin S. Yudkin, Louisville, for appellant.

Stuart A. Handmaker, Henry S. Johnson, Handmaker, Weber & Meyer, Louisville, for appellee.

Before HOWARD, HOWERTON and PARK, JJ.

HOWARD, Judge.

This is an appeal from a judgment entered in the Jefferson Circuit Court wherein the trial court directed a verdict on the issue of liability for breach of contract in favor of plaintiff-appellant, Leon Wahba (hereinafter referred to as Wahba), against defendant-appellee, Don Corlett Motors, Inc. (hereinafter referred to as Corlett Motors), and submitted only the issue of damages for breach of contract to the jury.

The jury returned a verdict in the amount of $875.00, that sum being the difference between the market price of a certain Audi and the price for a reasonably similar replacement vehicle. Wahba appeals, contending that the trial court erred in refusing to allow proof on the issue of Corlett Motors' alleged fraudulent actions and in refusing to submit instructions on punitive damages and consequential damages to the jury.

Wahba desired to purchase an Audi and on Saturday, August 6, 1977, went to Corlett Motors, an Audi dealer. Wahba looked at a used 1976 Audi Fox Station Wagon, took a test drive in it, and decided he wanted to purchase it.

Tom Whitehair, a salesman for Corlett Motors, and Wahba then discussed the purchase price of the station wagon. Whitehair stated that the list price of the car was $4,995.00. Wahba then made an offer of $4,225.00, a price which he thought was fair and reasonable. The purchase proposal was filled out by Whitehair, listing the price of the car at $4,225.00; Wahba then signed the proposal. All deals made by Whitehair had to be approved by the sales manager, Mack McKinney. Whitehair brought the purchase proposal into McKinney's office and McKinney initialed it.

Whitehair returned with the purchase proposal and stated to Wahba that he now owned the car. Whitehair explained that the purchase order also had to be filled out, and this form was completed, listing the exact same figures as those listed on the purchase proposal. Wahba signed the purchase order and gave Whitehair a check for $100.00 as down payment on the car.

Whitehair took the purchase order and Wahba's check into McKinney's office. It was then that McKinney came out to Wahba and said that the station wagon could not be sold for the price of $4,225.00. He stated that Whitehair had filled out the purchase proposal incorrectly which had misled him (McKinney) when he read the purchase proposal and initialed it. Wahba objected and said that a deal had been made. McKinney then returned Wahba's

check for the down payment. Wahba subsequently filed suit.

Wahba sought a writ of possession for the station wagon and also claimed consequential and punitive damages for fraud, under both the common law and the Consumer Protection Act. A restraining order was issued by Judge Charles Leibson, as hearing officer under KRW Chapter 425, forbidding Corlett Motors to move the car.

The purchase *proposal* stated that the terms of purchase were not binding until the purchase *order* was accepted by the dealer. After a hearing on the matter, Judge Leibson determined that the purchase proposal was a contract and issued an order directing Corlett Motors to specifically perform the contract by delivering the station wagon to Wahba. A temporary injunction was issued although the writ of possession was not signed at that time in order to avoid extra court costs. For some reason, unclear from the record, the car was not delivered. The writ of temporary possession was subsequently signed and the Sheriff took custody of the car. Corlett Motors then posted a bond and regained possession of the car pursuant to KRS 425.-116. The temporary injunction was later dissolved by Judge Paul Keith and Corlett Motors was allowed to sell the car to someone other than Wahba.

The case then came to trial before Judge Ryan. The trial court directed a verdict on the issue of liability on the part of Corlett Motors, holding that there was a binding contract and that Corlett Motors had breached same. The instruction given to the jury was for breach of contract damages only. The trial court decided, on the basis of Wahba's deposition, that no fraudulent action by Corlett Motors had been shown. No proof was allowed on that point at trial and no instruction on punitive damages was given. No instruction on consequential damages was given since it was not pled by Wahba until the day of trial by way of an amended complaint.

Wahba states that Corlett Motors acted fraudulently by attempting to "bait and switch" him to a second contract for the same station wagon at a higher price. He interpreted McKinney's action, in stating that a mistake had been made on the purchase proposal, as a "very thinly veiled form of pressure" in order to get him (Wahba) to offer more money for the car. Wahba also states that he has shown injury by pursuing his legal remedy, not getting the car, and having to purchase a substitute automobile at a higher price. He also states that he was denied his rights under KRS 367.170 and KRS 367.220 of the Consumer Protection Act to prove and collect punitive damages and attorney's fees.

The general rule is that an action for fraud and deceit cannot be maintained unless the "six elements" of fraud are shown, being: (a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury. *Cresent Grocery Co. v. Vick*, 194 Ky. 727, 240 S.W. 388 (1922). The burden is on the party asserting fraud to establish it by clear and convincing evidence. *Sanford Construction Company v. S & H Contractors, Inc.*, Ky., 443 S.W.2d 227 (1969).

The entire deposition of Wahba has not been filed before this Court. However, from what we are quoted from Wahba's deposition, he was not pressured by Whitehair, initially, into buying that particular Audi. Neither was he pressured by either Whitehair or McKinney into buying another car after the discussion about the erroneous purchase proposal. In Wahba's own words: "I was not defrauded to enter the contract, I was denied the proper execution of the terms of the contract, which stated that in return for my paying a said amount, I was to get a particular car." It also seems clear from portions of Whitehair's deposition that he was not one of the more astute used car salesmen.

It must also be remembered that Corlett Motors' defense, before liability was found, was that the purchase proposal was not a binding contract between the parties. Corlett Motors did not deprive Wahba of his

**360**

legal remedy either by asserting a defense to his complaint or by following the provisions of KRS 367.110 et seq. concerning repossession of the car.

We agree with the trial court that no fraudulent action was shown on the part of Corlett Motors by its agents, Whitehair and McKinney. Although a mistake was made by Whitehair, to the detriment of Wahba, in that he was not able to purchase a car listed at $4,995.00 for a price of $4,225.00, Wahba was allowed his damages for breach of contract. The fraud supposedly practiced on Mr. Wahba exists only in his mind.

 KRS 367.170 provides that unfair or unconscionable, false, misleading or deceptive acts are to be considered unlawful. The meaning of those words are "generally well understood by those who want to understand them." *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, Ky., 511 S.W.2d 224, 227 (1974). KRS 367.220(1) allows for recovery of punitive damages *where appropriate.* (Emphasis ours). KRS 367.220(3) provides that attorney's fees may be awarded to the prevailing party.

We do not believe that unfair or unconscionable acts were shown on the part of Corlett Motors. There being no violation of the Consumer Protection Act, Wahba was not wrongly denied his right to collect either punitive damages or attorney's fees under the provisions of the act.

 Punitive damages are ordinarily not recoverable in a breach of contract action. *General Accident Fire & Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685 (1966). And an instruction on punitive damages is warranted, in any case, only where " 'the defendant has acted wantonly, or recklessly, or oppressively, or with malice as implies a spirit of mischief or criminal indifference to civil obligations.' " *Louisville & Nashville Railroad Co. v. Jones Adm'r*, 297 Ky. 528, 180 S.W.2d 555 (1944); *Bisset v. Goss*, Ky., 481 S.W.2d 71 (1972).

 We believe that this is simply a breach of contract case. The allegations made by Wahba as to Corlett Motors' alleged outrageous conduct are refuted by Wahba himself. He was denied the execution of the terms of a contract he thought existed. He filed suit; Corlett Motors defended and lost. Wahba was then compensated for breach of that contract.

 A buyer is entitled to recover consequential damages when a breach occurs by the seller and the buyer secures substitute goods. KRS 355.2–712. KRS 355.2–715(2) states that consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting *had reason to know* and which could not reasonably be prevented by cover or otherwise." (Emphasis ours). KRS 355.1–201(25)(c) states that "[a] person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it."

Besides not being properly pled, we do not believe that the items of consequential damages claimed are those which Corlett Motors had reason to know at the time the contract was entered into.

The judgment of the trial court is affirmed.

All concur.