## Faulkner et al. v. Faulkner et al.

(Decided Nov. 19, 1937.)

694

W. B. EARLY for appellant.
POPE & UPTON and R. L. POPE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming in part and reversing in part.

D. W. Faulkner and his wife, Lucinda, lived for the greater part of their lives in Whitley county, Ky.

By frugal living and industry, they accumulated a small estate of some $600 or $700 of personal property and the small farm here involved, described as lying in three tracts and containing a total of some 30 acres.

It appears that in June, 1914, when both the husband and wife had reached a very advanced age and its attendant infirmities were bearing heavily upon them, with the further weight of mental incapacity added to the burdens of the wife, the husband, D. W. Faulkner, wishing to put his house in order and desiring to safeguard the provision he wanted to make for the comfort and support of his disabled mate, should she survive him, to such end undertook to distribute a certain equal part of his estate to each of his five children. These advancements were to be made them in consideration of their agreeing to relinquish all future claims against the estate thereafter left, which he wished to settle upon his wife, free from any and all dispute on the part of their children, as to how it might be used or encumbered by her, so far as found required for providing her with the support, medical attention, etc., called for by reason of her age and incapacity.

He attempted to carry out this plan by then making an advancement out of his estate to each of his children of $500 in money, or land estimated to be of such

value, for which he asked their receipts, reciting that such parts of his estate had been paid them in consideration of their waiving all further right or claim to any part or interest in his remaining estate, as his prospective heirs.

Under such an agreement these advances were made or offered to all of the children, three of whom accepted and receipted therefor as requested; the fourth child, Tom Faulkner, accepted a deed of conveyance of a certain tract of land, made him pursuant to such understanding, but failed to give the requested receipt therefor, while the fifth child, Joe Faulkner, though accepting the possession and use of an 11-acre tract the father had likewise offered to convey him in satisfaction of his expected inheritance, declined to accept a deed thereto, offered upon such terms, upon the ground that its value was less than that given the other children.

In October, 1919, a few years after the father's making of these advancements to his children, and in harmony with the terms of which they appeared to be satisfied to hold the property received by them thereunder, he died intestate, leaving surviving him his widow, Lucinda Faulkner, and the five children, to wit: Thomas C. Faulkner, Martha J. Provins, L. M. Faulkner, Joseph E. Faulkner, and Nancy Triplett.

The intestate's son, Tom Faulkner, was appointed and qualified as the administrator of his estate.

It appears by the testimony given by the children upon the later hearing of this case that, after making these stated advancements to the children, it was the father's intention to effectively carry out his intended plan by willing to his wife the home place, containing some 18 acres (that only remaining of his estate after the stated advancements were made to his children), so as to devise her a life estate in this property, with the right to use or encumber same so far as required for obtaining her needed comfortable support and maintenance, but that this plan was frustrated and failed by reason of his later rather sudden death, intestate.

Further, it appears that Tom Faulkner, appointed as the deceased's administrator, notwithstanding the agreement claimed to have been had with the children in consideration of the father's advancements made them, allotted to the widow only a homestead of 12 acres out of the 18 acres contained in the home place,

and had set aside to her all the cash and personal property, appraised at a total value of some $700 though, because of her then mental incapacity, he testifies it was paid over to him as administrator, to be applied by him for her use and benefit.

It further appears that following such disposition and allotment of the decedent's estate to his widow, she being left in her home alone and without proper provision made for her care or the supplying of her needs, that her daughter, Mrs. Nancy Triplett, came from her home in Florida to that of her mother, where she undertook the service of looking after her welfare and the management of her farm.

Failing to realize a sufficient income from her management of the home place with its 18 acres to provide for their mother's support, and the administrator having failed and refused to turn over to her the fund which had been paid over to him for her use and benefit, she instituted proceedings to have the mother adjudged incompetent and herself appointed as a committee to look after the welfare of the mother, with the further direction made that the administrator pay into court the fund remaining in the hands of the money which had been set aside to the mother, and that $30 of such amount be paid over to her each month for her ward's use and benefit.

Within a few days after the court's making of these orders, this suit was filed by the administrator of the estate, Thomas C. Faulkner, with L. M. Faulkner and Martha J. Provins joining as co-petitioners, wherein was alleged the death intestate of D. W. Faulkner in 1919, when the owner in fee of three tracts of land, to-wit, an 11-acre tract and the two further tracts, originally comprising the home place which had been divided into the homestead tract of 12 acres allotted to the widow, and the remaining 6-acre tract thereof not embraced within its allotment; further they alleged that upon the death of the decedent these lands had descended to the five named children and heirs at law of the decedent, subject to the homestead interest of the widow therein. Further, it was alleged that the defendant Nancy Triplett was not a fit and proper person to act as committee for their aged mother, for the reason that she was unable, by reason of her own incapacity, to properly care for the mother, and, further, was at-

tempting to convert to her own use the property and funds allotted to their mother, for which reason they asked that these three tracts of land, not being susceptible of division and allotment in kind to them without material injury to their interests, all be directed sold, subject to the homestead right of the mother in the one tract and for the division of the proceeds among them.

Answers and counterclaims were filed by the defendants, Nancy Triplett and her brother, Joe Faulkner, wherein it was set out that the plaintiffs were estopped, by reason of their settlement agreements, under which they had received from their father an advancement of their prospective shares in his estate in consideration of their releasing all further claims thereto, from now asking a sale of the remaining property and a division of the proceeds among them, having surrendered all claims thereto.

Further, they denied that like settlements had been made upon them by their father and alleged that, if the plaintiffs were now allowed to receive a further share in the property, as sought by them, it should be allowed them only upon terms of their being required to first restore to the estate the accrued interest on the money received by them or the total rentals upon the land deeded them which they had received, during the whole period of their use thereof, to the end that the defendants might be made even with the plaintiffs by then dividing the estate when so enhanced, equally between them.

Further, the cross-plaintiff, Nancy Triplett, denied that she was not a fit and suitable person to serve as her mother's committee and alleged that the county judge had so found and adjudged her to be when appointing her as such, and had directed that she be allowed compensation for her services so rendered at the rate of $1 a day.

Upon such and other issues not here involved, the case was submitted to the court upon the pleadings, proof, and exhibits filed, whereupon, at its regular January term, 1931, it was decreed: (1) That the plaintiffs therein should take nothing by their petition and that same should be dismissed; (2) that the intestate, the father of plaintiffs and defendants, in his lifetime had allotted to his five children in money or its equiva-

lent in land the sum of $500 each, which was intended to be and accepted by them as received in full settlement of their respective interests in his estate; (3) that, in the division of his estate, the plaintiff Thomas C. Faulkner, and defendant Joseph E. Faulkner, his brother, were allotted each a certain tract of land valued by the intestate at $500, which was the amount allotted and received in cash by the three other children, and deed to which Thomas Faulkner had accepted, but that no deed had been made to Joseph Faulkner to the land offered him as his share of the estate, for which reason it was adjudged that the master commissioner execute and acknowledge a deed of conveyance thereof to the said Joseph Faulkner, as his share of the estate allotted him by his father, should his other children or heirs at law fail or refuse to execute him a deed therefor; (4) the court further found and made a part of its judgment that the said Daniel Faulkner, at his death, intended to leave, and did leave, intact all the remainder of his estate to be used and enjoyed by his surviving widow and for her sole benefit during her lifetime, "and which lands include that set out and described in the petition herein including her homestead rights therein"; (5) that, deceased's widow being now eighty years of age and in failing health, she needs constant care and attention, and, it appearing from the evidence heard that her daughter, the defendant, Nancy Triplett, has heretofore been appointed as committee for her said mother, and she is a competent person to look after said widow of Daniel Faulkner, and that she is willing to assume said burden, and has been staying with and caring for her mother for several months, and it further appearing that there is no longer any money or personal property out of which to make any necessary or proper arrangements to take care of said widow of Daniel Faulkner, deceased, she is adjudged to have, and does hereby have, the exclusive use of all of said lands not heretofore allotted to said Joseph E. Faulkner and said Thomas C. Faulkner by Daniel Faulkner in his lifetime, for and during her natural life; (6) further it was decreed that the defendant, Nancy Triplett "is authorized to keep and maintain her said mother on said premises if she so desires or to * * * rent out said premises and property to the best advantage and with the rental arising therefrom, apply it for the payment of necessary food, clothing and medical needs of the said widow and

the said Nancy Triplett is now allowed, beginning with the date of this judgment, the sum of $1.00 per day for her services in caring for and looking after her mother so long as she lives or so long as she shall properly do so. To secure the payment of said sum of $1.00 per day to said Nancy E. Triplett for said services and to procure necessary food, clothing and medicines for the said widow of Daniel Faulkner, deceased, a lien is hereby adjudged upon said lands left by said Daniel Faulkner, and not allotted to any of his said children, and upon the death of his surviving widow, said lands shall be sold to the highest and best bidder, as in such cases for the sale of real estate is provided for by law and the proceeds arising from the sale of said lands will be divided equally among the said Thomas C. Faulkner, Joseph E. Faulkner, L. M. Faulkner, Martha Provins and Nancy Triplett, after the payment of said services to said Nancy Triplett as above set out and for whatever necessary food, clothing and medicines she may have expended for the use and benefit of her mother during her lifetime, beginning with the date of this judgment''; (7) further it was adjudged that the plaintiffs pay the cost of this action.

So stood the rights of these litigating parties as having been thus determined, upon the hearing of their cause upon its merits, by this final order or judgment rendered at its January, 1931, regular term of court.

Thereafter, at the January, 1934, term of court, it appears that an order was entered by agreement of parties, directing that the case ''be placed back upon the court's docket for any and all orders that may appear necessary.''

Following this order, one J. E. Cooper at the September, 1934, term of court filed his intervening petition to be made a party to the action, wherein he set out that in January, 1932, upon the resignation of the defendant Mrs. Nancy Triplett of her position as committee for her mother, he was appointed by the court to succeed her as said ward's committee, and did thereupon duly enter upon the performance of the duties of said trust, and that he had performed the duties of said trust for a term beginning with his appointment of some 730 days, for which he was entitled to receive the same compensation per day therefor which was adjudged and allowed the former committee, Mrs. Triplett, for her like services rendered the widow, as such, to wit, the

sum of $1 a day from the 22d day of January, 1932, as committee for said Lucinda Faulkner, until he is released as said committee herein by the death of his ward or otherwise and that, in addition to said sum, he be allowed the sum of $31.40 for necessities furnished to his said ward, and that, for any sum he is adjudged to recover in this action, he further be adjudged a lien upon the tract of land allotted to his ward as a homestead.

To this petition answer was filed, denying Cooper's right to file an intervening petition or to recover the amount asked therein or any sum for his services rendered his ward as committee or to recover the amount alleged expended by him in furnishing her certain necessaries.

To this pleading the intervening petitioner filed a reply at the September, 1935, term of court, wherein, after traversing the allegations of the answer, he affirmatively pleaded in his capacity as committee that all matters, rights, or claims by the several heirs of D. W. Faulkner, deceased, as to the ownership of the tract of land involved, and referred to in this case as the homestead of his said ward, had theretofore been adjudged by the court under its judgment rendered at its January, 1931, term, and that:

"All the pleadings, proof, orders and judgment in this case are hereby and now referred to and made a part of these pleadings and the said questions and claims that are sought to be put in issue by the defendant have been adjudged and that same are res adjudicata and that said defendants are now barred and estopped from claiming anything which is inconsistent with the judgment referred to, which has been heretofore entered in this case.

"That the identical questions now sought to be presented between the identical and same parties, that is as to the ownership of the twelve acre tract of land, have heretofore been adjudged; that the parties are the same; that the questions are the same; and that the judgment has adjudged the said questions and claims now sought to be presented. That said judgment is now in full force and effect, has not been set aside, modified, or appealed from, and that said defendants are now fully and completely bound by said judgment and should be required to comply with same."

Further, he stated that his ward, Lucinda Faulkner, the mother of said defendants, had died on March 5, 1935, and that since his filing of his original petition on August 25, 1934, he had continued to live with, care for, and maintain his ward, Lucinda Faulkner, until March 5, 1935; that under the judgment heretofore rendered in this case, awarding compensation of $1 per day to his ward's committee, he is entitled to recover the said sum of $1 per day for his like services as such, rendered his ward, from January 22, 1932, up to and including the day of her death, March 5, 1935, making a total of 1,138 days at $1 per day, amounting to $1,138; that, in addition to this, he is entitled to reimbursement of his money expended by him on behalf of his ward for medicine, clothing, repairs to her buildings, etc., as set out supra, and that he be adjudged recovery therefor in the sum of $1,138, and interest and a lien on the 12-acre homestead of the ward, and that same be sold to satisfy same, and that, if a deficit in the proceeds resulted, he prayed for a personal judgment against the heirs at law of Lucinda Faulkner jointly and severally in the full sum of $1,138, and for his costs.

Upon the later or second submission of this cause, involving the same parties and claims except those of the undertaker and second committee, to the court for judgment upon the whole case, the court at its September, 1935, term, or more than four years after the rendition of its first judgment in the case, adjudged that the claim of the Ellison Funeral Directors and Embalmers for $177 be allowed against the estate of Lucinda Faulkner, deceased; further, that the claim of the interpleader, J. E. Cooper, for his care, support, and maintenance of his ward for a total period of 1,249 days at the rate of $1 a day, be refused in the amount asked of $1 a day, but that the claim be allowed "to the amount of 50c a day, making a total of $624.50," and for its payment declared "a lien on the proceeds of the widow's land ordered to be sold."

Further the court found, reversing the provisions of the former finding and judgment, that the plaintiffs in the original petition were entitled to the relief therein asked and that the sale of the land therein described was necessary and ordered the same to be sold for the payment of the two claims against the estate of the deceased, Lucinda Faulkner, of the interpleader, Cooper,

and the said Ellison Undertaking Company, and for a distribution of the surplus proceeds among the children and heirs of D. W. Faulkner, deceased.

Further, this later judgment reversed the holding of the first in its allowance decreed the defendant Nancy Triplett for her service rendered her mother as committee of $1 a day for such time as they were rendered, by now adjudging that she be not allowed therefor her claim or any part thereof, "for the reason that it appears the defendant, Triplett, received out of the money on hand at the institution of this action more than sufficient to pay her for the time she was such committee on the basis allowed the interpleader, J. E. Cooper."

Complaining of this judgment, both as a whole and to each paragraph thereof, each and all of the plaintiffs and defendants have appealed, the appellee J. E. Cooper moving also for a cross-appeal and the appellee Nancy Triplett for an appeal against the judgment herein rendered attempting to set aside its former judgment in her favor and for a cross-appeal against the appellants.

Turning now our attention to a consideration of the several grounds upon which the parties contend this judgment should be reversed, we are of the opinion that the material contention of appellants which we find meritorious is that raised and pleaded in respect to this second judgment that it is of no effect in so far as it attempts to make a later and corrected adjudication respecting the matters and claims previously presented to the court by the same parties and finally determined upon their merits by the court's first judgment rendered at its January, 1931, term.

The applicable and well-settled rule as to this is that the circuit court has no jurisdiction at a subsequent term to set aside its judgment rendered at a former term on the ground that it was erroneous or that the proceedings were irregular. Wickliffe et al. v. Farmers' Bank of Frankfort, 142 Ky. 35, 133 S. W. 966.

Section 368 of the Civil Code of Practice defines a judgment as "a final determination of a right of a party in an action or proceeding," and in applying the test of such definition of a judgment to an order of court, to determine whether it was of final or interlocutory

character, we have repeatedly held that final judgments are "such as at once put an end to the action by declaring that the plaintiff has either entitled himself or has not to recover the remedy he sues for"; also that a final order, from which an appeal may be prosecuted, is (as again defined) one which "either terminates the action itself, decides some matter litigated by the parties, or operates to divest some right in such manner as to put it out of the power of the court making the order, after the expiration of the term, to place the parties in their original position." Helm v. Short, 7 Bush 623; Hughes v. Shreve, 3 Metc. 547; Autry v. Autry, 191 Ky. 42, 229 S. W. 79. Compare, too, the case of Smith v. Jones, 226 Ky. 785, 11 S. W. (2d) 937.

The 1931 judgment, when measured by these tests, we are of the opinion must be held to be a final judgment and one which the circuit court had no jurisdiction, at a subsequent term, to correct or set aside on the ground that it was erroneous.

Therefore, the award made by the first judgment of recovery to the committee, Mrs. Triplett, of compensation at the rate of $1 a day for services rendered her mother as such, could not be set aside by the court, as was here attempted, and for such reason its ruling in this must be reversed and held to be of no effect.

In the case of Culver v. Lutz, 171 Ky. 690, 691, 189 S. W. 240, it was declared that the circuit court, after the term, had no power to vacate or modify its judgment in the absence of some of the grounds contained in sections 518 and 340 of the Civil Code of Practice.

The challenged correction and modification here made of the first judgment by this judgment rendered some four years after the expiration of the January, 1931, term of the court in which the first judgment was rendered was not sought upon any of the grounds mentioned in sections 518 or 340 of the Code or by appeal, and therefore was unauthorized. Halcomb v. Phipps, 194 Ky. 648, 240 S. W. 363; Meuth v. Meuth, 171 Ky. 840, 188 S. W. 849; Trust Co. of America v. Casey, 131 Ky. 771, 115 S. W. 780; Com. v. Ratcliff, 119 Ky. 853, 84 S. W. 1147, 27 Ky. Law Rep. 297.

Therefore it follows that the appellants' contention that the court's judgment was improper, in so far as it attempted a correction of its earlier judgment, must be

sustained, and it is our opinion it should be reversed to the extent it attempts to reverse the provisions of the first judgment as to the allowance of recovery of compensation to the appellant Nancy Triplett for services rendered by her as committee and also to the extent it reverses the holding of the first judgment denying the right of the petitioners to ask a sale and distribution of proceeds among them of the land left by the intestate to his widow, subject only to her homestead therein; but the judgment is affirmed in its allowing the two claims here presented, the one representing the funeral expenses of the widow, which is adjudged to be a first and superior lien claim against the sale proceeds of the widow's land, and the other, the claim of J. E. Cooper, the widow's second committee, for compensation for services rendered, as neither of these claims nor these claimants were before the court when the first judgment was rendered and were therefore not precluded thereby. But, rather, the allowance here ordered of their claims came well within the holding of the first judgment.

However, the allowance made by the later judgment to Cooper of only 50 cents per day for the services rendered his ward, rather than at the rate of compensation allowed for the services of such committee by the first judgment of $1 a day, is reversed in respect to such reduction made, with the direction that the judgment in such respect be corrected so as to allow Cooper for his services as committee the sum of $1 a day.

Also, it appearing that the widow, Lucinda Faulkner, to whom these lands were given, with the right to encumber them so far as required to meet the indebtedness incurred in supplying her wants, the direction of the court that the lands so held for the period of her life be now sold is affirmed and the proceeds of the sale will be first applied to the payment of the funeral expenses, then to the payment of the claims of Nancy Triplett and the interpleader, J. E. Cooper, and, if same be insufficient therefor, that their claims be ratably paid therefrom after the payment of costs here incurred since the rendition of the first judgment. Should there be any sales proceeds remaining after the payment of these claims and costs, then the remainder is to be equally divided between the five named heirs at law of the intestate.