## Ashland Dry Goods Co. et al. v. Wages.

June 11, 1946.

Caldwell & Gray for appellants.

P. H. Vincent for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming in part, reversing in part.

This is an action for false arrest. On the afternoon of April 8, 1944, the appellee, Mrs. Nettie Wages, accompanied by her daughter and two small grandchildren, entered the department store belonging to the appellant, Ashland Dry Goods Company, for the purpose of buying a cap for one of the grandchildren. Mrs. Kemper, a clerk in the store who was known to Mrs. Wages, waited on them and sold Mrs. Wages a cap which, according to Mrs. Wages' testimony, was placed on the baby's head in the presence of Mrs. Kemper. Mrs. Wages removed the cap the child had been wearing and placed it in her purse. She handed a ten dollar bill to Mrs. Kemper who went to another part of the store for change. In the meantime, her daughter had taken

the other grandchild to the rest room, leaving Mrs. Wages and the baby alone near the counter at which she had made the purchase.

After she received her change Mrs. Wages went to another part of the store and presumably waited there for her daughter to return. While she was standing there the appellant, Mrs. Mittenthal, manager of the department from which the cap had been purchased, approached Mrs. Wages, and, according to appellee's testimony said: " 'Lady, give me whatever you put in your purse. Give me your purse so that I can take it out.' I said I didn't take anything and she said: 'Oh, yes, you did, I know better.' I said: 'I did not; I bought a cap and put it on the baby's head and put the old one in my purse.' She said: 'I want your purse so that I can take out whatever you put in it.' By that time my heart was beating so that I couldn't argue with her. Question: What did she do? Answer: She argued with me and said: 'You cannot leave the store, that is orders.' And I started walking off and she followed me and I said I didn't take anything and she reached over and jerked my purse and took it over to the end of the counter and this girl that reported me was standing there and she unzipped the purse and took the cap out and laid it down. She didn't give it to anybody. She went on through my purse and I had the little girl sitting there on the counter. I was ready to go down but I knew if I did she would put something in there and say I took it." Mrs. Mittenthal took the old cap from the purse and placed it in a bag and returned it to the appellee.

It appears from the evidence that one of the clerks in the store (not Mrs. Kemper) saw Mrs. Wages place the old cap in her purse and informed still another clerk of what she had seen and asked her advice as to what to do. She was advised to report the incident to Mrs. Mittenthal, which she did, and this resulted in the investigation and the incident which is the basis for this action.

It was a rule of the department store that all merchandise must be wrapped before the purchaser left the store with it, and it is contended for the appellants that Mrs. Mittenthal was only performing her duties in making the investigation which resulted in the actions complained of.

According to Mrs. Wages' testimony the incident caused her to become ill and nervous, to such an extent that she was forced to sit down and rest. That same afternoon she consulted a physician with whom she apparently had a previous appointment. It appears that for some years prior to the time the alleged false arrest occurred, Mrs. Wages had been going through a protracted menopause and had been treated for this condition, and for nervousness, by physicians prior to the 8th of April, 1944. According to her testimony the incident at the department store caused her nervous condition to become worse and resulted in additional treatment for that condition.

The case was first tried on November 16, 1944. At that trial the court instructed the jury as follows: "If you find for the plaintiff you may find for her as against the defendant, Helen Mittenthal, and the defendant, Ashland Dry Goods Company, jointly in a single sum, or against them separately in separate sums of different amounts. If you find for the plaintiff and award her both compensatory and punitive damages, you should separate the two, stating what part, if any, is compensatory and what part, if any, is punitive."

The jury returned a verdict for the appellee in the sum of $1500, making no separation as to compensatory or punitive damages. The appellants' motion for a new trial was sustained and the verdict and judgment of the jury were set aside.

A second trial was had on February 19, 1945, when the jury returned a verdict in favor of the appellee against both appellants for the sum of $100 for compensatory damages and the sum of $700 for punitive damages. The following day the appellants filed their motion and grounds for a new trial and at the same time filed a motion asking the court to set aside so much of the verdict as awarded punitive damages.

On March 8, 1945, the appellee filed a motion asking the court to set aside the verdict and judgment of the jury on the second trial and to substitute in lieu thereof the verdict and judgment of the jury rendered on the first trial. This motion was sustained by the court and the first judgment was substituted for the second one. Thereafter, on motion of the appellants, the court set aside its previous order of substitution and re-

instated the verdict and judgment rendered on the second trial. In the same order the court overruled appellants' motion and grounds for a new trial and this appeal followed.

As heretofore stated, the lower court first substituted the judgment at the first trial for the judgment at the second trial, but later rescinded this order and allowed the second judgment to stand. The appellee excepted to the latter order and has filed a cross-appeal. We shall first consider the cross-appeal.

When the lower court sustained appellants' motion for a new trial following the first judgment, the appellee objected and excepted to the ruling of the court but took no further steps until the motion to reinstate the first judgment was made. She did not pray an appeal and she did not prepare and tender a bill of exceptions within the proper time. This she should have done in order to preserve her rights. See Burton v. Spurlock's Adm'r, 294 Ky. 336, 171 S. W. 2d 1012; Whallen's Ex'rs v. Moore et al., 248 Ky. 348, 58 S. W. 2d 601; Clark v. Pullman Co., 205 Ky. 336, 265 S. W. 820; House v. Rawlings et al., 296 Ky. 578, 177 S. W. 2d 562, and Mitchell v. Randall, 297 Ky. 302, 179 S. W. 2d 868.

The cross-appeal, as indicated above, is from the court's order refusing to substitute the verdict and judgment of the first trial for that of the second, and not from the court's order sustaining the motion for a new trial following the first verdict and judgment. Under the practice in this jurisdiction an appeal from an order granting a new trial is held in abeyance until the second trial is held and an appeal is taken from the last judgment; but, in order to preserve the right of appeal from such order an exception must be taken, an appeal prayed, and a bill of exceptions prepared and tendered within the regular time. The appellee failed to do this and the circuit court had no jurisdiction at a subsequent term to set aside its previous judgment sustaining appellants' motion and grounds for a new trial. See Faulkner et al. v. Faulkner et al., 270 Ky. 693, 110 S. W. 2d 465, and Wickliffe et al. v. Farmers Bank of Frankfort, 142 Ky. 35, 133 S. W. 966. Therefore, it is not necessary to determine whether the court properly sustained appellants' motion and grounds for a new trial following the first trial of the case, but see Louisville & Nashville R. Co. v. Scott, 141 Ky. 538, 133 S. W. 800, 34

L. R. A., N. S., 206, Ann. Cas. 1912C, 547, and Brink v. Kennedy, 286 Ky. 566, 151 S. W. 2d 58. The cross-appeal must be dismissed.

Directing our attention to the second judgment and appellants' contentions for a reversal of it, it is noted that reliance is placed on two grounds: first—that the lower court was in error in overruling the motion for a directed verdict, and, second—that the question of punitive damages was improperly submitted to the jury. The other points contained in the motion and grounds for a new trial have apparently been abandoned on appeal.

It is vigorously argued that the acts of Mrs. Mittenthal do not constitute a false arrest or an unlawful detention of the appellee. In determining this question we must accept the appellee's version of the affair. It is contended that the transactions as recited by the appellee do not amount to false imprisonment, the theory being that appellee was in no way restrained and was at liberty to go her way. We are unable to agree with this contention since, although appellee probably was at liberty to leave the store at any time, and there is no evidence that she was forcibly restrained from doing so, the result of her departure would have been an automatic parting with her purse. It is natural to assume that the appellee, knowing her innocence, was most reluctant to leave the store without her purse and its contents. We are of the opinion that the retention of the purse and the statement by Mrs. Mittenthal that the appellee could not leave the store until the package was wrapped constituted an unlawful detention of the appellee without her consent and against her will, and that the court properly submitted this quesion to the jury. See Miller v. Ashcraft, 98 Ky. 314, 32 S. W. 1085, and National Bond & Investment Co. v. Whithorn, 276 Ky. 204, 205, 123 S. W. 2d 263.

The question as to whether an instruction as to punitive damages should have been submitted is more troublesome. In the Restatement of the Law on Torts, Section 908, subsection b., it is said: "Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others."

Punitive damages are damages other than compen-

satory or nominal damages, awarded against a person to punish him for his outrageous conduct. The purpose of awarding punitive damages, sometimes called "smart money", is to punish the person doing the wrongful act and to discourage such person and others from similar conduct in the future. Such damages are proper only when the wrongful act is wanton, malicious, or reckless. There must be a showing that the acts were either willful or malicious or that they were performed in such a way as would indicate a gross neglect or disregard for the rights of the person wronged. See National Bond & Investment Co. v. Whithorn, supra; Great Atlantic and Pacific Tea Co. et al. v. Smith, 281 Ky. 583, 136 S. W. 2d 759, and C. I. T. Corporation v. Short, 273 Ky. 190, 115 S. W. 2d 899.

Mrs. Wages' own testimony clearly reveals that the situation was devoid of any evil motive, actual malice, or deliberate violation of the rights of appellee. Mrs. Mittenthal was acting in accordance with what she believed her duty to be, for when it was reported to her that Mrs. Wages had placed something in her purse, it was her duty to investigate. The method and manner of her investigation, even according to appellee's testimony, indicates that there was a good faith controversy between the parties and that Mrs. Mittenthal was acting within what she thought to be her rights.

We are unable to find any evidence which would justify an instruction as to punitive damages, the necessary elements to sustain such damages being noticeably absent. Therefore, we are of the opinion that the question of punitive damages should not have been submitted to the jury and that the judgment for such damages was erroneous.

Accordingly, the judgment for $100 as compensatory damages is affirmed, but the judgment is reversed as to the remaining $700 which the jury allowed on account of punitive damages. See Louisville & N. R. Co. v. Scott, supra.

The cross-appeal is dismissed and the judgment is affirmed in part and reversed in part in accordance with the views herein expressed.