Barron KIDD and Barron Ulmer Kidd, d/b/a Bee–Kay Company, a partnership; J. T. Gist, Elizabeth D. Wellington; and Morgan Guaranty Trust Company of New York and H. G. Wellington, Jr.; Co-Executors of the Estate of H. G. Wellington, Sr., Deceased, Plaintiffs-Appellees,

v.

Marshall BURLEW; Ray Ryan and Helen Ryan, partners, d/b/a Ryan Oil Company; James Edgar Fox and Maude Alice Fox, Defendants-Appellants.

No. 18575.

United States Court of Appeals
Sixth Circuit.

Feb. 19, 1969.

Doran E. Perdue, Henderson, Ky., Perdue & Stigger, George E. Stigger, III, Henderson, Ky., on brief, for appellants.

William G. Craig, Owensboro, Ky., Sandidge, Holbrook, Craig & Hager, Ronald M. Sullivan, Owensboro, Ky., on brief, for appellees.

Before PHILLIPS, PECK and Mc-CREE, Circuit Judges.

PECK, Circuit Judge.

The plaintiffs-appellees sought a declaration of rights and other specific relief under an oil and gas lease in the District Court. The controversy arose out of the different interpretation and effect given an amendment to the initial lease by the parties.

The original lessees, Bee-Kay Company (a partnership composed of Barron Kidd and Barron Ulmer Kidd), and the lessors, (James and Maude Fox), entered into an oil and gas lease covering over 450 acres in February 1963. The lease provided in part that one well must be drilled within six months of the lease and another within the second six months, and thereafter that eight more wells must be drilled at the rate of two per year. If such conditions were not met, the lease terminated. The lessees' first test well found gas in May 1963, but the gas was not extracted because no pipeline to a market was available. Whether this well would have produced gas in marketable quantities was later questioned, as was the legal effect of that circumstance.

An amendment to the lease was entered into in July 1963, and it provided in part:

"In event a gas well is completed on said leased premises and no market is available, this lease shall be extended by payment of *Four Hundred and fifty No/100* Dollars per year, payable to Lessor."

A second well drilled in August 1963, pursuant to the lease was dry and therefore abandoned. The lessees paid the $450 provided by the amendment in these subsequent years: 1964, 1965, and

1966. The lessees viewed the amendment as an extension of the original lease and argue that under it the payment of the $450 was a substitute for the requirement that two additional wells had to be drilled per year. The lessors did not view the amendment as such and in September 1966, they gave a second lease for the same 450 acres to the defendants-appellants, Marshall Burlew and Ryan Oil Company. A contemporaneous unrecorded "Memorandum of Agreement" recited that the second lease was executed without any warranty of title and made subject to the claims or rights, if any, of the first lessees. The complaint herein, filed shortly thereafter, aligns the lessees under the first lease as plaintiffs against the lessors and the lessees under the second lease as defendants. The original lessees tendered their $450 payment in January 1967, but the lessors refused to accept it.

The District Court found the first well of the plaintiffs-appellees to be a gas well that satisfied the terms of the amendment and extended the original lease. The Court then declared the first lease valid and rendered the second lease of the defendants-appellants void and cancelled. The Court further considered the $450 payment that was tendered but refused as having been paid in 1967 for the period of extension ending February 11, 1968. Finally, the Court awarded punitive damages in the amount of one thousand dollars.

The defendants-appellants contend that the District Court did not have proper jurisdiction over the parties; that the Court's declaration was erroneous and against the weight of the evidence; and that their actions were not such to warrant an award of punitive damages.

■■ We find that the parties were properly before the District Court and that the requisite diversity existed. We hold that the District Court's findings that the well of the plaintiffs-appellees was a gas well capable of producing gas so that the subsequent yearly payments of $450 extended the lease as provided for in the 1963 amendment was not clearly erroneous. The declaration of the Court is upheld in all particulars except for the allowance of punitive damages.

■ The pleadings of the plaintiffs-appellees did not include a request for punitive damages, but the District Court found it to be unnecessary under Kentucky law for a plaintiff to pray for such damages in express terms so long as the pleadings placed the defendant on notice that such recovery was sought. Louisville & N. R. R. v. Taylor, 237 S.W. 2d 842 (Ky.1951). The rules of Kentucky concerning punitive damages further provide that this award need not bear a proportional relationship to the award of actual damages, but it must bear some relationship to the injury and the cause thereof. See Flame Coal Company v. United Mine Workers of America, 303 F.2d 39, 46, 97 A.L.R.2d 1136 (6th Cir. 1962) and the cases cited therein. The District Court awarded punitive without compensatory damages, which Kentucky law seems to permit (Louisville & N. R. R. v. Ritchel, 148 Ky. 701, 147 S.W. 411, 41 L.R.A.,N.S., 958 (1912)), when it concluded that the conduct of the defendants-appellants was wilful, mischievous and wanton. Harrod v. Fraley, 289 S.W.2d 203 (Ky.1956); Ashland Dry Goods Company v. Wages, 302 Ky. 577, 195 S.W.2d 312 (1946); Great Atl. & Pac. Tea Company v. Smith, 281 Ky. 583, 136 S.W.2d 759 (1939).

■ That, as found by the District Court, the defendants-appellants had full knowledge of the status of the original lease, of the amendment and of the payments made under it as well as of the pertinent physical facts concerning the wells and the property itself, cannot be questioned. Hypothesizing the strongest case against the defendants, we for present purposes assume that the lessors considered themselves to have entered into an unfortunate agreement which in effect placed a limitation on the use of 450 acres of their land upon payment of $1.00 a year per acre, and that they sought legal advice to ascertain whether

in fact the amendment was valid and binding [1]. This was not the first time that a party to what he felt was a bad bargain sought the advice of an attorney for relief, and the legal profession may well hope it will not be the last. Here the legal advice obtained indicated a way out. Our affirmance of the District Judge's conclusions of law in this regard establishes our agreement as to the controlling law, but it cannot reasonably be claimed that the question was without difficulty. Quite the contrary. The advice given to lessors was strongly bolstered by Kidd v. Hoggett, 331 S.W.2d 515 (Tex.Civ.App.1959) and Kidd v. Hickey, 237 S.W.2d 389 (Tex.Civ.App. 1950), which were the most nearly analogous cases available to counsel prior to the filing of the District Judge's decision in the present case. Clearly a question of law existed concerning which a layman would be ill-advised not to obtain an attorney's opinion prior to determining his course of action. Similarly, our conclusion that the District Court's finding that the first well was capable of producing gas was not clearly erroneous does not mean that that question of fact was free from doubt. For that reason appellants and their lawyers prudently sought and obtained opinions from experts in the areas of geology and engineering to the effect that the initial well was not capable of producing gas in commercial quantities. In reliance on the opinions of these experts in the areas of law and the germane physical sciences the appellants entered into the second lease. That they recognized that they took this action at their peril is evidenced by the fact that the contemporaneously executed Memorandum of Agreement provided that the second lessees would hold the lessors harmless against any claims of the first. However, the taking of that calculated risk does not constitute such wilful and reprehensible action, conducted in a spirit of mischief and indicative of wanton dis-

regard of the rights of others, as will justify the assessment of punitive damages.

The judgment of the District Court will be affirmed except for that portion thereof awarding punitive damages, which will be vacated.

1. The complexity of the legal question presented here is exemplified by the fact that persuasive arguments were present-

ed pro and con as to whether 0, 40, 160 or the entire 450 acres were subject to the extension provided in the amendment.