Wade BANKS, Appellant,

v.

John FRITSCH, Appellee.

No. 1999–CA–002254–MR.

Court of Appeals of Kentucky.

March 2, 2001.

David A. Weinberg, Weinberg & Capello, Lexington, KY, Brief and Oral Argument for Appellant.

Arthur L. Brooks, Brooks, Fitzpatrick & McComb, Lexington, KY, Brief and Oral Argument for Appellee.

Before GUDGEL, Chief Judge; and BARBER and KNOPF, Judges.

## OPINION

KNOPF, Judge.

The appellant, Wade Banks, brought this complaint against the appellee, John Fritsch, alleging false imprisonment, assault and battery, and outrageous

conduct. A jury trial was conducted on July 21, 1999. At the close of Banks's case, the trial court directed a verdict in favor of Fritsch, finding that Banks had failed to present evidence that he had been damaged by Fritsch's conduct. We find that the trial court erred in dismissing the claims for false imprisonment and assault and battery as there was sufficient evidence of emotional damages to warrant submitting the issue to the jury. However, we also conclude that the tort of outrageous conduct is not available under the facts presented in this case. Hence, we reverse the trial court in part, affirm in part, and remand this action for a new trial.

Since the trial court dismissed this action on a motion for a directed verdict, we shall view the evidence in the light most favorable to the appellant. In June 1996, Banks was 17 years old and was a Junior at Bourbon County High School. His last class of the school day was Agriculture Wood Construction, taught by Fritsch. By his own admission, Banks had either skipped the class or left the class early on a number of occasions during that semester.[1] Banks testified that, while he was walking to the class on June 4, another student told him that Fritsch had a chain, and was planning to chain Banks up to keep him from skipping class. Nevertheless, Banks proceeded to the class.

Banks testified that when Fritsch walked into the classroom, he had a large log chain over his shoulder and had several key locks on his belt loop. Fritsch then told Banks that he was going to keep him from leaving the class early. After taking roll, Fritsch directed Banks to put his leg up on a chair so he could put the chain around Banks's ankle. Banks states that

he initially protested, and then went along after Fritsch repeated the instruction. Fritsch secured the chain around Banks's ankle, and led him outside to an area where the class was painting feed troughs. Fritsch then put the chain around a tree, locked it, and told Banks not to go anywhere.

The entire class followed Fritsch and Banks from the classroom to the tree. After Banks was secured to the tree, Fritsch returned to the classroom and the other students went on with their projects. Banks sat down under the tree, removed his shoe and began trying to work the chain loose. After several minutes, Banks was able to remove the chain from his ankle, and he then attempted to leave the school premises. Several of his classmates chased Banks down, tackled him, and then carried Banks back to the tree. Fritsch returned, placed another chain around Banks's neck, and then secured it to the chain around the tree.

Banks testified that he initially stood up and held the chain to keep its weight off of his neck. After about fifteen minutes, he got tired of holding the chain, so he sat down and began crying. Banks told another student that the chain was bothering him, and the student went to tell Fritsch. Several minutes later, Fritsch came and removed the chain from Banks's neck. However, Fritsch then secured the other chain tightly around Banks's ankle.

Thereafter, Fritsch and Banks began discussing his grades in the class and what it would take from him to pass. Fritsch returned to the classroom to check his records to see if Banks was in a position to pass the class. Upon returning five minutes later, Fritsch told Banks that he could pass the class if he painted the three re-

---

1. Fritsch's records show that Banks had missed class seven or eight times from January through April, and an additional ten days during May. However, the school's attendance records only show Banks absent from the class on three days. In his testimony, Banks admitted that he had skipped the class at least eight times. Fritsch's records also show that several other students skipped the class more often than Banks. According to Banks, the other students were in his work group, and he was often left to complete projects alone. Fritsch testified that he was aware of this problem, and gave Banks the painting assignments so that Banks might be able to complete his class work.

maining feeder and mineral troughs. Banks agreed and Fritsch removed the chain. Banks subsequently finished the painting assignments, and he received a passing grade in Fritsch's class. Banks testified that the chaining incident took place over a period of about an hour and a half.

Fritsch's account of the incident differs only slightly in the details, but markedly in tone. Fritsch testified that the idea of chaining Banks started as a joke between him and the other students in the class. Several days prior to the incident, Fritsch made an off-hand comment in front of the class to the effect that perhaps he should chain the truant boys to keep them from skipping class. On June 4, as Banks was arriving for class, the other students reminded Fritsch of this statement. After some prodding from the class, Fritsch decided to go forward with the plan.

Fritsch further testified that Banks never objected to the chaining, and in fact, he went along with the joke and appeared to enjoy the attention. Fritsch did not recall placing the chain on Banks's leg in the classroom and leading him outside. This testimony was contradicted somewhat by another teacher, Ralph Speakes, who saw Banks leaving Fritsch's classroom with the chain around his ankle. However, Speakes also testified that everyone (including Banks) seemed to be laughing about it. In addition, Fritsch states that after Banks managed to remove the chain the first time, he called it to the attention of the other students and dared them to catch him. Several students informed Fritsch about Banks's escape, and they asked Fritsch what they should do about it. Fritsch told them that Banks should come back and finish the project, but he stated that he did not tell any of the students to bring Banks back. Speakes testified that Banks appeared to be leading

the chase, and after the students caught up with Banks, they merely led him back to the class area. Fritsch denied that Banks ever showed that he was upset about the chaining or that he ever asked for the joke to stop, except for when Banks complained about the chain around his neck. Fritsch steadfastly denies that the chaining was intended as a punishment, or that he ever intended to hurt or humiliate Banks. Rather, Fritsch merely intended it as a light-hearted prank to impress on Banks the importance of staying in class and finishing his assignments. Fritsch further stated that the entire incident took place over 25 to 30 minutes.[2]

Banks testified that he was deeply upset by the chaining and thought about it often. After the incident was publicized, he states that other students gave him a hard time about it on several occasions. He also received a lot of unwelcome and negative media attention over the incident. In response, he decided that he could not return to Bourbon County High School in the fall. Instead, he went to live with his father and attended his senior year of high school in Columbia, Missouri. Banks testified that the move was traumatic for him, and it was difficult for him to fit in at his new school.

Banks saw a psychologist to discuss his feelings once prior to the move to Missouri. Banks further testified that sometimes he has flashbacks and sometimes starts to cry over memories of the chaining. His family members stated that Banks had a hard time dealing with the incident and often seemed withdrawn. However, there was no expert testimony describing Banks's emotional state following the chaining.

At the close of Banks's case, the trial court granted Fritsch's motion for a directed verdict. The court determined that

---

**2.** Following a complaint by Banks's mother, the school superintendent investigated the incident and suspended Fritsch for 45 days. Fritsch challenged the suspension and sought a hearing. The Kentucky Department of Education appointed a three-member tribunal to hear the matter pursuant to KRS 161.790. The Tribunal conducted a hearing and set aside the suspension.

there was enough evidence to establish that a false imprisonment and an assault and battery occurred. However, the court concluded that there was no evidence that Banks had been damaged by Fritsch's conduct. The trial court stated on the record:

I mean, this strikes me as being exactly what it's characterized as, a prank, and perhaps one that was not appreciated by Mr. Banks and I can understand that, but I don't see that there's been any harm done here. Clearly, Mr. Fritsch should not have done this. He's been told that by a number of people, I think he realizes that. The fact is it happened, and basically there seems to be no harm, no foul here. And I haven't been proved-it hasn't been proven to me, and therefore I don't think the jury can find that there are damages here that Mr. Banks has suffered. There's evidence of that, I don't think that that is significant at this point. I think on the basis of the damages issue, that I am going to direct a verdict here in favor of Mr. Fritsch on all of these counts. I just don't think the jury has enough evidence to decide that Mr. Banks has been damaged by the incidence [sic], that it has been proven to then happen.

The trial court's written order granted the directed verdict for Fritsch based upon the oral findings in the record. Banks now appeals, arguing that there was sufficient evidence of damages to warrant submitting the issue to the jury. He further argues that he was also entitled to an instruction on punitive damages.

Fritsch responds that the trial court properly granted his motion for a directed verdict because Banks failed to establish the elements of false imprisonment, assault and battery, and outrageous conduct. However, the trial court specifically granted the directed verdict based upon lack of

evidence to establish that Banks was damaged by Fritsch's actions. Moreover, the trial court found that Banks had presented sufficient evidence to create a jury issue on his claims alleging false imprisonment and assault and battery. Since Fritsch did not file a cross-appeal contesting this finding, this appeal is limited to the question of whether Banks presented sufficient evidence of damages to overcome Fritsch's motion for a directed verdict.

On a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party.[3] Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous.[4] However, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses.[5]

In order to consider the propriety of the trial court's decision to grant the motion for a directed verdict, we must first consider the nature of the claims asserted by Banks. The action for the tort of false imprisonment, sometimes called false arrest, is a lineal descendant of the old action of trespass to person. It protects the personal interest in freedom from physical

3. *Meyers v. Chapman Printing Co., Inc.*, Ky., 840 S.W.2d 814, 821 (1992).

4. *Bierman v. Klapheke*, Ky., 967 S.W.2d 16, 18–19 (1998).

5. *Id.* at 19.

restraint.[6] The interest involved is "in a sense a mental one," and false imprisonment may be maintained without proof of actual damages.[7] The tort is complete after "even a brief restraint on the plaintiff's freedom," and the plaintiff may recover nominal damages.[8] The plaintiff is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury to health. Since the injury is in large part a mental one, the plaintiff is also entitled to damages for mental suffering, humiliation and the like.[9]

■■■ Kentucky cases define false imprisonment as being any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise.[10] Furthermore, false imprisonment requires that the restraint be wrongful, improper, or without a claim of reasonable justification, authority or privilege.[11] Fritsch's potential liability does not arise out of his efforts to keep Banks from leaving the class, and there is no contention that Fritsch was acting within the scope of his authority as a teacher. Rather, Fritsch's primary defense is that there was no imprisonment because Banks consented to being chained.

There are no Kentucky cases which directly discuss what evidence is necessary to prove damages from false imprisonment. However, a number of cases are instructive insofar as they address evidentiary issues relating to submission of the issue of damages to the jury. In *Butcher v. Adams*,[12] the plaintiff's testimony that he was humiliated by his false arrest on charges relating to the operation of his tavern was mitigated by evidence that he had previously been arrested on similar charges. The court noted that this evidence was sufficient for the jury to consider whether the plaintiff had actually been embarrassed by the false imprisonment.

In *Bradshaw v. Steiden Stores, Inc.*,[13] a store patron was detained for an hour while the store owner checked on the validity of her check. The store owner then told her to go to a back room, where briefly the patron was questioned by two policemen. Once the validity of the check was established, the patron was allowed to go. The former Court of Appeals acknowledged that the patron had established a "borderline" case of false imprisonment. However, the Court noted that there was no evidence that the patron had been unnecessarily humiliated or embarrassed by the incident. Since at most the evidence would have justified an award of nominal damages, the Court concluded that the directed verdict in favor of the store owner was not reversible error. Similarly, in *SuperX Drugs of Kentucky, Inc. v. Rice*,[14] this Court held that, in an action for false imprisonment where the person is subsequently and properly charged with the commission of a felony, she can recover damages only for that mental suffering and embarrassment

---

6. *Prosser & Keeton on Torts* § 11, at 47 (5th ed.1984) (hereafter *Prosser & Keeton* ).

7. *Id.* at 47.

8. *Id.* at 48.

9. *Id.*

10. *Grayson Variety Store, Inc. v. Shaffer*, Ky., 402 S.W.2d 424 (1966); *Great Atlantic & Pacific Tea Co. v. Billups*, 253 Ky. 126, 69 S.W.2d 5 (1934); *Ford Motor Credit Co. v. Gibson*, Ky.App., 566 S.W.2d 154 (1977). *See also Columbia Sussex Corp., Inc. v. Hay*, Ky. App. 627 S.W.2d 270 (1981).

11. *See Great Atlantic & Pacific Tea Co. v. Smith*, 281 Ky. 583, 136 S.W.2d 759 (1939); *J.J. Newberry Co. v. Judd*, 259 Ky. 309, 82 S.W.2d 359 (1935); and *Louisville & Nashville Railroad Co. v. Mason*, 199 Ky. 337, 251 S.W. 184 (1923).

12. 310 Ky. 205, 220 S.W.2d 398 (1949).

13. Ky., 265 S.W.2d 64 (1954).

14. Ky.App., 554 S.W.2d 903 (1977).

which she endured during the period prior to her arrest. Under these circumstances, this Court concluded that the plaintiff was entitled to no more than nominal damages, and the jury's award of $75,000.00 in compensatory damages was clearly excessive.

The common thread among all these cases is that a plaintiff may be entitled to at least nominal damages arising from the humiliation, emotional distress or damage to reputation caused by the false imprisonment. "Humiliation and embarrassment are, by their nature, not easily quantified...."[15] Nevertheless, the degree of humiliation or embarrassment actually suffered by the plaintiff is a factual matter for the jury to decide.

There was clearly a factual issue concerning whether Fritsch's conduct constituted an unlawful imprisonment of Banks. Furthermore, Banks testified that he suffered humiliation, embarrassment, emotional distress and he was held up to the ridicule of his peers by being publicly chained. There was contrary evidence that Banks did not express any distress during the chaining. Nevertheless, we are satisfied from the record that the jury could have returned a verdict for Banks for an amount greater than nominal damages. Consequently, we find that the trial court's decision to dismiss this claim was erroneous.

∎ Banks's second claim is that Fritsch's conduct amounted to an assault and battery. Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching.[16] Since intent is an essential element of assault and bat-

tery, the trial court properly left to the jury the issue of Banks's consent to the chaining.[17] However, a plaintiff need not prove actual damages in a claim for battery because a showing of actual damages is not an element of assault or battery and, when no actual damages are shown for a battery, nominal damages may be awarded.[18] Furthermore, a recovery for emotional distress caused by the assault or battery is allowable as an element of damages in an action based upon those torts.[19] Consequently, we find that the trial court's dismissal of Banks's claims for assault and battery also was erroneous.

Banks's third claim was that Fritsch's conduct amounted to the tort of outrageous conduct. The trial court did not address this claim, but presumably the court's finding that Banks failed to prove damages applies to this claim also. The tort of intentional infliction of emotional distress, or outrage, was first recognized in Kentucky in *Craft v. Rice.*[20] In that case, the Kentucky Supreme Court adopted the following portion of Section 46 of the Restatement (Second) of Torts:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.[21]

∎ In order to recover, the plaintiff must show that defendant's conduct was intentional or reckless, that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency, that a causal con-

---

**15.** *Daugherty v. Kuhn's Big K Store,* Ky.App., 663 S.W.2d 748, 752 (1983) (*quoting Kentucky Commission on Human Rights v. Fraser,* Ky., 625 S.W.2d 852, 855 (1981)).

**16.** *Brewer v. Hillard,* Ky.App., 15 S.W.3d 1, 8 (1999).

**17.** *Graves v. Dairyland Insurance Group,* Ky., 538 S.W.2d 42, 45 (1976).

**18.** *Vitale v. Henchey,* Ky. 24 S.W.3d 651, 659 (2000) (*citing* 6 Am.Jur.2d., *Assault and Battery* §§ 144 and 146).

**19.** *Rigazio v. Archdiocese of Louisville,* Ky. App., 853 S.W.2d 295, 299 (1993).

**20.** Ky., 671 S.W.2d 247 (1984).

**21.** Restatement (Second) of Torts, § 46(1) (1965).

nection exists between the conduct complained of and the distress suffered, and that the resulting emotional stress was severe.[22] An action for outrage will not lie for "petty insults, unkind words and minor indignities"; the action only lies for conduct which is truly "outrageous and intolerable." [23]

In addition, the tort of outrage is intended as a "gap-filler", providing redress for extreme emotional distress where traditional common law actions do not. Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie. Recovery for emotional distress in those instances must be had under the appropriate traditional common law action.[24]

We have previously held that Banks may be able to recover emotional damages arising from false imprisonment, assault or battery. Hence, Banks must show that Fritsch's actions were intended only to cause him extreme emotional distress, rather than to merely touch or to deprive him of his liberty. We find no evidence in the record which would support such a finding by the jury. As a result, Banks's claim of outrageous conduct would not be appropriate in this case, and the trial court properly granted a directed verdict on this cause of action.

Lastly, Banks argues that he was entitled to an instruction on punitive damages. The trial court did not address this issue because it dismissed the action based upon lack of evidence of compensatory damages. Since we are remanding this action for a new trial, the trial court must consider the propriety of an instruction on punitive damages based upon the evidence presented at that time. However, we shall briefly address the standards for an award of punitive damages on these claims.

In false imprisonment cases, punitive damages are not justified absent "a showing that the acts were either willful or malicious or that they were performed in such a way as would indicate a gross neglect or disregard for the rights of the person wronged." [25] With regard to Banks's claim for punitive damages arising from the alleged assault and battery, we find the following discussion from *Fowler v. Mantooth*,[26] to be relevant in this case:

It is a rule of longstanding in this Commonwealth that exemplary or punitive damages may be recovered in an assault and battery case ... where the assault is willful, malicious and without justification. *Shields Adm'rs v. Rowland,* 151 Ky. 136, 151 S.W. 408 (1912). This is true even when no serious bodily harm results. *Watts v. Lingenfelton,* 10 Ky.Op. 535 (1880).

The threshold for the award of punitive damages is misconduct involving something more than merely commission of the tort. The "something more" necessary in the present case was defined in the instructions as a finding "that the assault was willful, malicious, and without justification." Malice may be implied from outrageous conduct, and need not be express so long as the

**22.** *Humana of Kentucky, Inc. v. Seitz,* Ky., 796 S.W.2d 1, 2–3 (1990).

**23.** *Kroger Co. v. Willgruber,* Ky., 920 S.W.2d 61, 65 (1996).

**24.** *Rigazio,* 853 S.W.2d at 299; *Brewer v. Hillard,* 15 S.W.3d at 7–8.

**25.** *Horton v. Union Light, Heat & Power Co.,* Ky. 690 S.W.2d 382, 389 (1985) (*quoting Ash-*

*land Dry Goods Co. v. Wages,* 302 Ky. 577, 195 S.W.2d 312, 315 (1946)).

**26.** Ky., 683 S.W.2d 250 (1984). Banks also argues that KRS 411.010 requires the trial court to instruct the jury on punitive damages in any civil action seeking recovery for assault and battery. However, that statute merely permits a defendant to introduce evidence of provocation in mitigation of a claim for punitive damages.

conduct is sufficient to evidence conscious wrongdoing. *Hensley v. Paul Miller Ford, Inc.,* Ky., 508 S.W.2d 759 (1974). *Hensley* cites Prosser, *Law of Torts* § 2 (4th Ed.1971), stating that punitive damages are "permitted" "[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage." *Id.* at 762.

The mere fact that the act is intentional and a tort does not justify punitive damages absent this additional element of implied malice, meaning conscious wrongdoing. *Harrod v. Fraley,* Ky., 289 S.W.2d 203 (1956); *Ashland Dry Goods Co. v. Wages,* 302 Ky. 577, 195 S.W.2d 312 (1946). Fowler's evidence in the present case, if accepted by the jury (as it was), substantiated the element of *conscious* wrongdoing. The distinction is best illustrated by *Harrod v. Fraley, supra* at 205, where instructions permitting an award of punitive damages if the jury "found that the alleged assault was committed 'wrongfully' [i.e., tortiously]," were held erroneous because they did not further "require the jury to find that the assault was maliciously, wantonly or wilfully committed" before awarding punitive damages. The instructions in the present case required such a finding.[27]

In conclusion, we find that the trial court erred in granting a directed verdict in favor of Fritsch on the issue of proof of damages regarding Banks's claims for false imprisonment and assault and battery. Neither of these intentional torts requires proof of damages for at least a nominal award, and there was sufficient proof of emotional damages which would justify submitting the issue to the jury. However, Banks's ability to obtain emotional damages for these claims precludes any recovery based upon the tort of outrageous conduct. Furthermore, an instruction on the outrage claim is not justified based upon the lack of evidence that Fritsch's conduct in chaining Banks only was intended to cause severe emotional distress. Lastly, the trial court should consider the propriety of an instruction on punitive damages based upon the evidence presented at trial.

Accordingly, the judgment of the Bourbon Circuit Court is reversed in part, affirmed in part, and remanded for a new trial in accord with this opinion.

ALL CONCUR.

---

**27.** *Id.* at 252.